## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN D. SLEDGE, )  | |
| )  | |
| **Plaintiff,** )  | |
| )  | |
| v. )  | **Civil Action No. 06-0742 (PLF)** |
| )  | |
| UNITED STATES OF AMERICA, )  | |
| )  | |
| **Defendant.** )  | |

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER

Defendant, the United States of America, by and through counsel, respectfully requests that plaintiff's complaint be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. Should the court deny defendant's motion to dismiss, defendant requests that the Court transfer this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), because transfer would promote the interests of justice and the Court there would be a more convenient forum. A memorandum of points and authorities in support of defendant's motion is attached hereto as well as a proposed order consistent with the relief sought.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN D. SLEDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0742 (PLF) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER**

## I. FACTUAL BACKGROUND

On October 15, 2002, at approximately 1:05 p.m., an officer at the Federal Correctional

Institution-Allenwood, Pennsylvania ("FCI-Allenwood") observed an unresponsive inmate lying

on the floor of cell 109. See Exhibit A, Declaration of Lieutenant James Lyons, ¶ 4. This inmate

was identified as Rico Woodland, Register Number 10822-007. Id.[1] As staff responded to the

unit and began securing cells, they observed Woodland's cellmate, inmate Jesse Sparks, Register

Number 08096-007, with injuries consistent with having had a physical altercation. See id.; See

Exhibit D, Inmate History (Quarters) for Inmate Jesse Sparks, Register Number 08096-007. See

also Exhibit E, Inmate History (Quarters) for Inmate Rico Woodland, Register Number 10822-

---

[1] On April 20, 1990, Rico Woodland was convicted of Assault with Intent to Kill While
Armed, Armed Robbery, Possession of a Firearm During a Crime of Violence or Dangerous
Offense, Carrying a Pistol Without a License, Possession of an Unregistered Firearm and
Unlawful Possession of Ammunition, and sentenced to a term of fifteen (15) to forty-five (45)
years. See Exhibit B, Public Information Data, pp. 3-5. He was sent to FCI-Allenwood on July
11, 2001. See Exhibit C, Inmate History-Adm. Rel., p. 3.

007.  Medical Staff responded to the cell, and Woodland was transported to a local hospital.[2/]
See Exhibit A, ¶ 4.  The Federal Bureau of Investigation responded to FCI-Allenwood to
investigate.  See id.

The investigation revealed that, during the morning of October 15, 2002, Woodland and
Sparks had engaged in a mutual, physical altercation.  See id. at ¶ 5.  Woodland did not notify the
staff of this altercation nor discuss with them any concerns about his physical safety.  Id. at ¶ 6.
In addition, Woodland attempted to hide this altercation from staff.  See Exhibit F,
Correspondence from BOP Northeast Regional Office, dated October 24, 2005, regarding
Administrative Tort Claim Number TRT-NER-2005-00259.  Between 12:41 p.m. and 12:56
p.m., Woodland and Sparks engaged in another physical altercation inside of cell 109.  See
Exhibit A at ¶ 7.  During this altercation, Sparks repeatedly kicked Woodland in the upper torso
and head while wearing boots.  Id.  The investigation also revealed that inmate Ishmael Ford-Bey
held the cell door closed during the fight.  Id.  Another inmate positioned two cell doors at ninety
degree angles to interfere with the view of the surveillance cameras on that range.  See Exhibit A
at ¶ 8.  This inmate then stopped the unit officer who was about to begin an afternoon census
count, and requested a broom and dust pan which were located in a secure room.  Id.  This
delayed the unit officer from discovering the fight or Woodland.  Id.

On December 11, 2003, a grand jury sitting in Williamsport, Pennsylvania, returned a
four-count indictment charging Jesse L. Sparks and Ishmael Ford-Bey with several offenses

---

[2/]On December 13, 2002, Woodland was transferred to the Federal Medical Center in Fort
Worth, Texas.  See Exhibit C, p. 2; First Amended Complaint ¶ 13.  On March 22, 2005,
Woodland was transferred to the United States Medical Center for Prisoners, in Springfield,
Missouri.  Id. at p. 1; First Amended Complaint at ¶ 15.

related to the assault of Woodland.  See Exhibit G, Docket Report, Criminal Action No. 03-cr-00364-MM-1; Exhibit H, Docket Report, Criminal Action No. 03-cr-00364-MM-2.  On June 2, 2005, Sparks was sentenced in the United States District Court for the Middle District of Pennsylvania to ten years followed by three years of supervised release for Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6).  See Exhibit I, Public Information Data for Inmate Jesse Sparks, Registration Number 08096-007, pp. 3-5.  On September 28, 2004, Ford-Bey was sentenced in the United States District Court for the Middle District of Pennsylvania to time served followed by two years of supervised release.  See Exhibit H, p. 5.

On October 15, 2004, Woodland filed an administrative tort claim which was received by the Bureau of Prisons ("BOP") Northeast Regional Office on May 20, 2005.  See Exhibit J, Administrative Tort Claim Number TRT-NER-2005-00259.  Woodland alleged that the Bureau of Prisons failed to protect him from attack, and sought $50,000,000 in damages.  See id.  By letter dated October 24, 2005, Woodland's claim was denied because there was no evidence of negligence on the part of BOP staff.  See Exhibit F, Correspondence from BOP Northern Regional Counsel.  On January 29, 2006, Woodland passed away.  See Exhibit K, Certificate of Death, Rico Woodland.

In the First Amended Complaint ("Amended Complaint"), plaintiff's personal representative, Steven Sledge, claims that prison employees:  1) "knew or should have known that individuals at FCI-Allenwood, including Jesse L. Sparks and Ishmael Ford-Bey, posed a specific, concrete and immediate threat to Woodland's life[;]" and 2) "knew or should have known that Woodland was being attacked by individuals including Jesse L. Sparks and Ishmael Ford-Bey."  Amended Complaint at ¶¶ 31-32.  Therefore, "Prison Employees had a specific duty

3

to stop the attack or take other actions to protect Woodland[,]" and breached that duty by failing to do so.  See id.

In the Amended Complaint, plaintiff also states that the "medical center employees knew or should have known that Woodland was not receiving adequate medical care."  See id. at ¶ 16. On November 29, 2006, plaintiff submitted an administrative "claim alleg[ing] that the BOP negligently and/or recklessly caused . . . Woodland to suffer personal injuries by failing to provide adequate sustenance and/or medical care . . . ."  See id. at ¶ 25, Exhibit L, Administrative Tort Claim Number TNT-NCR-2007-01011.  On November 29, 2006, Woodland's mother, Diane Sledge, submitted "an administrative claim for relief "alleg[ing] that the BOP negligently and/or recklessly caused the death of . . . Woodland by failing to provide adequate sustenance and/or medical care . . . ."  See id. at ¶ 26, Exhibit M, Administrative Tort Claim Number TNT-NCR-2007-01012.  On November 29, 2006, plaintiff also submitted an administrative "claim alleg[ing] that the BOP negligently and/or recklessly caused the death of Woodland by failing to protect him from attack."  See id. at ¶ 24, Exhibit N, Administrative Tort Claim Number TNT-NER-2007-01132.  All of plaintiff's claims should be dismissed.

## II.  LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001) (quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller:  Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon

4

courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.") A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; see also Cureton v. United States Marshal Serv., 322 F. Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004). "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - - its very power to hear the case." Mortensen v. First Fed. Sav. and Loan Assn, 549 F.2d 884, 891 (3rd Cir. 1977). Plaintiffs suing under the Federal Tort Claims Act bear the burden of establishing the court's subject matter jurisdiction. Gaubert v. United States, 499 U.S. 315 (1991); Simpkins v. District of Columbia Gov't, 108 F.3d 366, 370-71 (D.C. Cir. 1997).

### III. ARGUMENT

**A. Plaintiff Has Failed to Exhaust Administrative Remedies With Respect to Any Claims Regarding Woodland's Medical Care or Death**

As indicated supra, the Amended Complaint indicates that, on November 29, 2006, plaintiff submitted an administrative "claim alleg[ing] that the BOP negligently and/or recklessly caused . . . Woodland to suffer personal injuries by failing to provide adequate sustenance and/or medical care . . . ." See Amended Complaint at ¶ 25, Exhibit L. On November 29, 2006, Woodland's mother submitted "an administrative claim for relief "alleg[ing] that the BOP negligently and/or recklessly caused the death of . . . Woodland by failing to provide adequate sustenance and/or medical care . . . ." See id. at ¶ 26, Exhibit M. Finally, on November 29,

5

2006, plaintiff submitted an administrative "claim alleg[ing] that the BOP negligently and/or recklessly caused the death of Woodland by failing to protect him from attack." See id. at ¶ 24, Exhibit N.  Plaintiff does not appear to be seeking redress for these claims in his Amended Complaint.  See Amended Complaint at ¶ 28 (If BOP denies claim that it negligently and/or recklessly caused the death of Woodland, plaintiff *will* assert this claim in court); id. at ¶¶ 25, 26 (If BOP denies claim that BOP failed to provide adequate sustenance and/or medical care, plaintiff *will* assert these claims.)(emphasis added).  However, to the extent plaintiff's Amended Complaint is construed to have asserted these claims, they must fail.

The Federal Tort Claims Act ("FTCA") bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.  See McNeil v. United States, 508 U.S. 106, 113 (1993).  Claimants must exhaust their administrative remedies by filing an administrative FTCA claim within two years after the accrual of the claim, and then filing a complaint in district court within six months after the agency denies the claim.  See 28 U.S.C. § 2401(b); Schuler v. United States, 628 F.2d 199, 201-02 (D.C. Cir. 1980); Bryant v. Carlson, 652 F. Supp. 1286, 1287 (D.D.C. 1987).  Claimants may not file suit in district court until the agency denies the claim or six months after the claim is filed.  See 28 U.S.C. § 2675(a).

The administrative claims regarding Woodland's medical care or death were received by BOP's North Central Regional Office on December 4, 2006.  See Exhibits L and M.  The administrative claim "alleg[ing] that the BOP negligently and/or recklessly caused the death of Woodland by failing to protect him from attack" was received by the BOP North Central Regional Office on December 4, 2006, and forwarded to the BOP Northeast Regional Office for administrative processing.  See Exhibit N.  See also Exhibit O, Memorandum from BOP North

Central Regional Office, dated December 15, 2006, regarding Administrative Tort Claim Number TRT-NER-2007-01132.  The BOP has not denied these claims, and six months have not passed since their filing.  <u>See</u> Exhibit P, Correspondence from BOP North Central Regional Office, dated December 22, 2006, regarding Administrative Tort Claim Number TRT-NCR-2007-01011. <u>See</u> <u>also</u> Exhibit Q, Correspondence from BOP North Central Regional Office, dated December 22, 2006, regarding Administrative Tort Claim Number TRT-NCR-2007-01012. <u>See</u> <u>also</u> Exhibit R, Correspondence from BOP Northeast Regional Office, dated February 15, 2007, regarding Administrative Tort Claim Number TRT-NER-2007-01132.  Therefore, the assertion of these claims before this Court is premature, and they must be dismissed for failure to exhaust his administrative remedies.  <u>See</u> 28 U.S.C. § 2401(b); 28 C.F.R. § 543.32(g); <u>See</u> <u>also</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 269 (D.C. Cir. 2001)(A motion to dismiss is a proper procedural vehicle for adjudicating a plaintiff's failure to exhaust its administrative remedies.).

### B.  Plaintiff's Claim that Bureau of Prisons Officials Failed to Protect Woodland is Barred by the Discretionary Function Exception to the Federal Tort Claims Act.

The United States can be sued only to the extent that it has waived its sovereign immunity.  <u>United States v. Orleans</u>, 425 U.S. 807, 813-814 (1976); <u>see</u> <u>United States v. Testan</u>. 424 U.S. 392, 399 (1976) (waiver of sovereign immunity cannot be implied); <u>United States v. King</u>, 395 U.S. 1, 4 (1969); <u>Valdez v. United States</u>, 56 F.3d 1177, 1179 (9th Cir.1995).  The Federal Tort Claims Act is a limited waiver of sovereign immunity granting district courts

> exclusive jurisdiction of civil actions on claims against the United States, for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where . . . a private person, would be liable . . .

[under] the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1).  See Sloan v. Dep't of Housing and Urban Dev't, 236 F.3d 756, 759

(D.C. Cir. 2001).  This waiver of sovereign immunity, however, is subject to a number of

statutory exceptions.

> Title 28, United States Code, Section 2680(a) provides that:
>
> The provisions of . . . section 1346(b) . . . shall not apply to -
> a.  Any claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation . . . or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty on
> the part of a federal agency or an employee of the Government . . . .

28 U.S.C. Section 2680(a).

This "discretionary function exception" is an important limitation on the FTCA's waiver

of sovereign immunity.  The discretionary function exception "marks the boundary between

Congress' willingness to impose tort liability upon the United States and its desire to protect

certain Government activities from exposure to suit by private individuals."  United States v.

Varig Airlines, 467 U.S. 797, 808 (1984).  By fashioning an exception for discretionary

governmental functions, "Congress took 'steps to protect the Government from liability that

would seriously handicap efficient government operations.'"  Id. at 814 (quoting United States v.

Muniz, 374 U.S. 150, 163 (1963)).  If the conduct at issue falls within the discretionary function

exception, the court lacks subject matter jurisdiction since sovereign immunity has not been

waived.  See Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995); Black Hills

Aviation, Inc. v. United States, 34 F.3d 968, 972 (10th Cir. 1994); Kirchmann v. United States, 8

F.3d 1273, 1274 (8th Cir. 1993); In re Glacier Bay, 71 F.3d 1447, 1450 (9th Cir. 1995).

To determine whether a government agency or employee's conduct is protected under the discretionary function exception, the Supreme Court has developed a two prong test. See United States v. Gaubert, 499 U.S. 315 (1991); Berkowitz v. United States, 486 U.S. 531 (1988). Under this test, a court must determine 1) whether the federal agency or employees had a choice in making the decision or taking the challenged action; and 2) whether the choice involved social, economic and/or political policy considerations. Id. at 536. Under the first prong of this test, the court must determine if the action is "specifically prescribed" by a federal statute, regulation or policy. Id. at 536. The statute, regulation, or policy must be both specific and mandatory, and must embody a "fixed or readily ascertainable standard." Starrett v. United States, 847 F.2d 539, 541 (9th Cir. 1988); Alabama Elec. Co-op v. United States, 769 F.2d 1523, 1529 (11th Cir. 1985) (quoting Miller v. United States, 710 F.2d 656, 663 (10th Cir. 1983)). In order to strip the agency action of the discretionary function exception's protection, a directive must clearly dictate a particular course of conduct on the subject at issue. See Baum v. United States, 986 F.2d 716, 720 (4th Cir. 1993). If the action was not "specifically prescribed" by a federal statute, regulation or policy, then the challenged conduct is the "product of judgment or choice," and the first prong of the test is satisfied.

The second prong of the test is rooted in the discretionary function exception's purpose to "prevent judicial second guessing of legislative administrative decisions grounded in social, economic and political policy." Gaubert, 499 U.S. at 323. Hence, the court must determine whether the agency or employee's judgment was "based on considerations of public policy." Id. (quoting Berkovitz, 486 U.S. at 537). The focus of the analysis is not whether or how policy considerations were weighed in the decision-making process but, rather, whether or not those

9

decisions were susceptible to policy considerations.  Gaubert, 499 U.S. at 325.  Day-to-day

operational and management decisions of a federal agency, not just those made by high-level

government officials, often implicate policy considerations.  Id. at 328, 332; In re Consolidated

Testing U. S. Atmospheric Testing Litigation, 820 F.2d 982, 993 (9th Cir. 1987) ("acts of

subordinates in carrying out the operations of government in accordance with official directions

cannot be actionable")(quoting Dalehite v. United States, 346 U.S. 15, 36 (1953)); 28 U.S.C. §

2680(a).  See Fazi v. United States, 935 F.2d 535, 538 (2nd Cir. 1991).  If an "established

government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a

Government agent to exercise discretion, it must be presumed that the agent's acts are grounded

in policy when exercising that discretion."  Gaubert, 499 U.S. at 324-325; Dalehite, 346 U.S. at

36 ("Where there is room for policy judgment and decision, there is discretion.").  Plaintiff has

the burden of rebutting that presumption.  See Dykstra v. BOP, 140 F.3d 791, 795-96 (8th Cir.

1988).

    1.  FCI-Allenwood Employees' Actions Were the Product of Judgment or Choice

        Plaintiff alleges that FCI-Allenwood employees 1) "knew or should have known that

individuals at FCI-Allenwood . . . posed a specific, concrete and immediate threat to Woodland's

life[;]" and  2) "knew or should have known that Woodland was being attacked . . . ."  Amended

Complaint at ¶¶ 31-32.  Plaintiff argues that these BOP employees had a specific duty to stop the

attack or take other actions to protect inmate Woodland, and that the employees breached that

duty.  In making these claims, plaintiff challenges the security and staffing at FCI-Allenwood at

the time of the incident.

        Under the first prong of the discretionary function analysis, the Court must determine if

there were federal statutes, regulations, or procedures in place that required BOP employees to follow a particular course of action in protecting Woodland from other inmates. See Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995); Drake v. Fed. Aviation Admin., 291 F.3d 59, 72-73 (D.C. Cir. 2002). Here, there were not.

> Title 18, United States Code, Section 4042 (a)(2)-(3) states that:
>
> The Bureau of Prisons, under the direction of the Attorney General, shall -
>
> (2) provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . . .

18 U.S.C. § 4042(a)(2) and (a)(3). Section 4042 has been interpreted as requiring the BOP to exercise "ordinary diligence." Cowart v. United States, 617 F.2d 112, 116 (5th Cir. 1980), cert. denied, 449 U.S. 903 (1980); Herrington v. United States, 1984 WL 1279 (S.D.N.Y. Nov. 28, 1984)(under 18 U.S.C. § 4042, government owes prisoners a duty of "ordinary care.").

However, while 18 U.S.C. § 4042 generally delegates responsibility for inmates to the BOP, "[t]he statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997). Instead, prison officials are given considerable discretion on how best to use their limited resources to fulfill this responsibility. The absence of specific guidelines of appropriate conduct by BOP employees in administering these duties, therefore, leaves judgment or choice to the employees. Buford v. United States, D. Kan. No. 97-2263-JWL, 1999 WL 319078 (Apr. 28, 1999) (where method, extent, and thoroughness of procedures used to protect

prisoners were left unspecified, there was an element of discretion in how guards could satisfy 18 U.S.C. § 4042).

In addition, Title 28, Code of Federal Register, Section 541 provides general guidance to employees of correctional institutions in fulfilling their duties.  However, as is true of the governing statutes, there is no mandate as to specifically how the staff duties are to be fulfilled.  See Calderon, 123 F.3d at 949 (none of the federal regulations cited within 28 C.F.R. §541 sets forth a mandatory, non-discretionary action that was required to be taken prior to the attack on plaintiff by another inmate); see also Caudle v. United States, 72 F.3d 132 (7th Cir. 1995)(unpublished opinion) (dismissing claim by plaintiff who was severely stabbed by other inmate without provocation because the manner in which the BOP fulfills its statutory duty to protect prisoners is discretionary).  Because no statutes, regulations or procedures exist which require FCI-Allenwood employees to follow a specific course of action when protecting and supervising inmates, the first prong of the discretionary function analysis is satisfied.

2.  The Practices at FCI-Allenwood are Grounded in Policy

Under the second prong of the discretionary function analysis, the court must determine whether the BOP's management decisions regarding the supervision and protection of inmates were grounded in social, economic or political policy.  Gaubert, 499 U.S. at 323; see Sloan v. U.S. Dep't of Housing and Urban Dev't, 236 F.3d 756, 761 (D.C. Cir. 2001).  The focus of the inquiry is not on the "agent's objective intent in exercising discretion conferred by statute or regulation, but on the nature of the actions taken or whether they are susceptible to policy analysis.  Id. at 325.

In making decisions regarding the appropriate security measures within FCI-Allenwood,

BOP officials must "balance the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison . . . ." Calderon, 123 F.3d at 951.  These decisions regarding the manner in which FCI-Allenwood is staffed, and how inmates are monitored and protected, necessarily involve judgment and discretion.[3/]  When established governmental policy, as expressed or implied by statute, regulation or agency guidelines, "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  Gaubert, 499 U.S. at 324; Dalehite, 346 U.S. at 36("Where there is room for policy judgment and decision, there is discretion."); Dykstra, 140 F.3d at 796 ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors which are inherently grounded in social, political, and economic policy.").  Therefore, although prison employees have a duty to protect inmates, "decisions made as to how best to fulfill that duty are protected by the discretionary function exception."  Barrett v. United States, 845 F. Supp. 774, 782 (D.Kan. 1994)("prison regulations and the statutes with which they conform are grounded in social, political, and economic policy and, thus, decisions made in accordance with these regulations are protected by the discretionary function exception.").

---

[3/]The Supreme Court has repeatedly recognized that broad deference is to be afforded to the discretion exercised by prison administrators in adopting and executing policies and practices which address the day-to-day problems in operating a corrections facility.  E.g., Thornburgh v. Abbott, 490 US 401, 408 (1989); Turner v. Safley, 482 U.S. 78, 85 (1987); Bell v. Wolfish, 441 U.S. 520, 547 (1979); Pell v. Procunier, 417 U.S. 817, 827 (1974).  In fact, the Court has stated that, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."  Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981).   This "deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline."  Whitley v. Albers, 475 U.S. 312, 3231 (1986).

Moreover, FCI-Allenwood employees were not informed of the existence of any danger to Woodland.  See Exhibit A, ¶ 6.  During the altercation, other inmates prevented staff from discovering the altercation or protecting Woodland.  Id. at ¶¶ 7-8.  FCI-Allenwood employees could not protect Woodland from some harm about which they were unaware.  However, even if FCI-Allenwood employees knew of the altercation, their actions would be protected by the discretionary function exception.  See Calderon, 123 F.3d at 949-50 (where inmate informed at least four members of prison staff that he had been threatened and staff took no steps to protect inmate or discipline inmate who threatened him, discretionary function exception applied when inmate was assaulted because 28 C.F.R. § 541 did not "set forth a mandatory, non-discretionary disciplinary action which the BOP was required to take."); Miller v. United States, 992 F.2d 1223(10th Cir. 1993)(where prison officials received anonymous note of impending fight between two groups of inmates, prison staff was increased, but plaintiff was seriously injured, court found that actions of prison officials in response to the potential fight were discretionary as a "prison's internal security is normally left to the discretion of prison officials.")(internal citations omitted)(unpublished opinion).  Because the decisions made regarding the staffing and security at FCI-Allenwood clearly involved judgments grounded in policy, the second prong of the discretionary function analysis is satisfied.

As both prongs of the discretionary function exception have been satisfied, plaintiff's FTCA claims must be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); Baird v. United States, 653 F.2d 437, 439 (10th Cir. 1981) (discretionary function exception is a matter of subject matter jurisdiction), cert denied, 454 U.S. 1444 (1982); Barrett, 845 F. Supp. at 780 n.4 (same); see also Cope, 45 F.3d 448 (where exception to FTCA waiver applies, the Court

14

lacks subject matter jurisdiction.)

### C.  Plaintiff's Amended Complaint Should be Transferred to the Middle District of Pennsylvania

In the event this Court does not dismiss Plaintiff's FTCA claims, this matter should be transferred to United States District Court for the Middle District of Pennsylvania.  Pursuant to 28 U.S.C. § 1402(b), venue for any FTCA claim lies in the judicial district where the plaintiff resides or where the cause of action arose.  See 28 U.S.C. § 1402(b); Bryant v. Carlson, 652 F. Supp. 1286, 1287 (D.D.C. 1987); Bartel v. Fed. Aviation Admin., 617 F. Supp. 190, 198 (D.D.C. 1985).  According to the Amended Complaint, plaintiff is the duly-appointed personal representative of the estate of inmate Rico Woodland and resides in the District of Columbia. See Amended Complaint at 3.  Based upon the residency of plaintiff, venue is in the United States District Court for the District of Columbia is proper.

However, Title 28, United States Code, Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"The purpose of the transfer provision is 'to prevent the waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" Ross v. United States, No. 86-0857, 1987 WL 33514, at *5 (D.D.C. December 30, 1987) (citing Van Dusen v. Barrack, 376 U.S. 612, 617 (1964) (additional citations omitted)).  "There are no fixed rules for determining when a case should be transferred.  Instead the proper approach is a case-by-case evaluation of the statute's requirements in light of the relevant facts."  Id. (citing Van Dusen, 376 U.S. at 622; SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978),

aff'd, 587 F.2d 1149 (1981); Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974)(en banc).

The threshold determination in considering a transfer motion is whether the case might have been brought in the place where the movant seeks it to be transferred. Ross, 1987 WL 33514, at *2. Here, all of the events giving rise to plaintiff's claims occurred at FCI-Allenwood in Allenwood, Pennsylvania. So, the case could have been brought in Pennsylvania. See Beattie v. United States, 592 F.Supp. 780, 784 (D.D.C. 1984), aff'd, 756 F.2d 91 (D.C. Cir. 1984) (A tort claim arises under the FTCA at the place where the acts occurred.) In fact, not a single factual allegation in the Amended Complaint concerns events which occurred in the District of Columbia. Further, none of the relevant evidence nor witnesses are located in the District of Columbia. Moreover, FTCA actions are governed by the law of "the place where the act or omission [complained of] occurred." 28 U.S.C. § 2672. Therefore, decisions in this case will be governed by Pennsylvania law, and a court in Pennsylvania would be most familiar with the application of that law. See Ross, 1987 WL 33514, at * 4 (on a motion to transfer, a court considers the familiarity of a federal district court with the law of the state in which it sits.)

"Because none of the operative events that constitute the gravamen of plaintiff's claims took place in the District of Columbia," Zakiya v. United States, 267 F. Supp.2d 47, 59 (D.D.C. 2003); none of the relevant documents or witnesses are located in the District of Columbia; and the residency of the personal representative is the matter's only connection to the District of Columbia, this case should be transferred to the Middle District of Pennsylvania. A transfer of this case will "prevent the waste of time, energy and money and will protect the witnesses, the public, and the government . . . against unnecessary inconvenience." See Ross, 1987 WL 33514, at *5.

16

## CONCLUSION

Accordingly, for the reasons set forth above, defendant respectfully requests that the

Court dismiss this action, or in the alternative, grant defendant's motion to transfer this action to

the Middle District of Pennsylvania.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR # 435409
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant


Of Counsel:

Ann H. Zgrodnik
Senior Counsel
Litigation Branch
Office of General Counsel
Federal Bureau of Prisons
320 First Street, N.W., Room 977E
Washington, D.C.  20534

## CERTIFICATE OF SERVICE

I certify that, on this 16th day of April, 2007, the foregoing, and the attached Order,

were mailed postage prepaid to:

        Thomas F. Connell
        Demian S. Ahn
        Wilmer Cutler Pickering
         Hale and Dorr, LLP
        1875 Pennsylvania Avenue, N.W.
        Washington, D.C.  20006

         /s/
         MARIAN L. BORUM
         Assistant United States Attorney

18

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN D. SLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0742 (PLF) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

This matter is before the Court on defendant's Motion to Dismiss Amended Complaint or, in the Alternative, to Transfer. Upon consideration of this Motion and the entire record of this case, it is this _____ day of _____, 2007,

**ORDERED** that Defendant's Motion to Transfer should be and hereby is GRANTED.


_____
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **STEVEN D. SLEDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0742 (PLF)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter is before the Court on defendant's Motion to Dismiss Amended Complaint or, in the Alternative, to Transfer.  Upon consideration of this Motion and the entire record of this case, it is this _____ day of _____, 2007,

**ORDERED** that Defendant's dispositive Motion should be and hereby is GRANTED; and it is further

**ORDERED** that this case should be and hereby is DISMISSED with prejudice from the Court's docket.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

      Marian L. Borum
      Assistant United States Attorney
      555 Fourth Street, N.W.
      Civil Division
      Washington, DC  20530

      Thomas F. Connell
      Demian S. Ahn
      Wilmer Cutler Pickering
       Hale and Dorr, LLP
      1875 Pennsylvania Avenue, N.W.
      Washington, D.C.  20006