IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN D. SLEDGE, In His Capacity As Personal Representative Of The Estate Of RICO WOODLAND, Deceased,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:06-CV-00742-PLF<br>)<br>)<br>)<br>)<br>) |

**CONSENT MOTION TO AMEND COMPLAINT AND RESET SCHEDULE**

Pursuant to Federal Rules of Civil Procedure 15, 20, and 21, and Local Civil Rules 7(i) and 15.1, Plaintiff respectfully requests leave to file a Second Amended Complaint.  Pursuant to Local Civil Rule 7(m), counsel for Plaintiff contacted counsel for Defendant and provided Defendant a copy of the attached Second Amended Complaint.  Defendant consented to the filing of the Second Amended Complaint as well as the schedule set forth in the proposed order attached to this motion.  An original of the Second Amended Complaint is attached.

Further background in support of this Consent Motion is set forth in Plaintiff's Statement of Points and Authorities, which is filed contemporaneously herewith.

This 22nd day of June, 2007.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ *Thomas F. Connell*
　　　　　　　　　　　　　　　　　　　　Thomas F. Connell   DC Bar #289579
　　　　　　　　　　　　　　　　　　　　Demian S. Ahn  DC Bar #491109
　　　　　　　　　　　　　　　　　　　　WILMER CUTLER PICKERING HALE
　　　　　　　　　　　　　　　　　　　　AND DORR LLP
　　　　　　　　　　　　　　　　　　　　1875 Pennsylvania Ave., N.W.
　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20005
　　　　　　　　　　　　　　　　　　　　(202) 663-6000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN D. SLEDGE, In His Capacity As Personal Representative Of The Estate Of RICO WOODLAND, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 1:06-CV-00742-PLF |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENT MOTION TO AMEND COMPLAINT AND RESET SCHEDULE**

Pursuant to Federal Rules of Civil Procedure 15, 20 and 21, and Local Civil Rules 7(i) and 15.1, Plaintiff submits this Statement of Points and Authorities in support of his Motion to Amend Complaint and Reset Schedule. Pursuant to Local Civil Rule 7(m), counsel for Plaintiff contacted counsel for Defendant and provided Defendant a copy of the attached Second Amended Complaint. Defendant consented to the filing of the Second Amended Complaint, as well as the schedule set forth in the proposed order attached to this motion. *See* Fed. R. Civ. P. 15(a).[1] Further background in support of this Consent Motion is set forth below.

**FACTUAL BACKGROUND**

On October 15, 2002, while he was incarcerated at Federal Correctional Institution-Allenwood ("FCI-Allenwood"), Rico Woodland was brutally attacked in his cell. Proposed Second Amended Complaint ("SAC") ¶ 10. The attack was enabled and caused by the

---

[1] Defendant consented to the relief requested in Plaintiff's Motion, but has not agreed with the allegations in this Statement of Points and Authorities, which is submitted for the benefit of the Court.

1

negligence of Federal Bureau of Prisons ("BOP") employees. *Id.* ¶¶ 12-13, 39, 48. Before the attack, BOP employees knew—or, but for their negligence would have known—that Woodland was in grave danger. *Id.* ¶ 12. During the attack, BOP employees knew—or, but for their negligence would have known—that Woodland was being assaulted. *Id.* ¶ 13. These and possibly other negligent failures allowed Woodland's assailants the opportunity and the time—as much as thirty minutes—to beat Woodland within an inch of his life. *Id.* ¶¶ 11-13, 39, 48.

Woodland suffered grave injuries during the attack, including massive brain damage that left him comatose for several months. *Id.* ¶ 14. When he later regained consciousness, he endured terrible and constant pain. *Id.* Nevertheless, his condition improved while he was hospitalized at the Fort Worth Federal Medical Center in Fort Worth, Texas. *Id.* ¶ 15. He was able to resume contact with his family, including his mother Dianne Sledge, his daughter Angelique Higgins, his sister Teresa Sledge, and Plaintiff Steven Sledge, his brother. *Id.* ¶ 16.

Woodland might have recovered from many of his injuries, if the BOP had provided him adequate sustenance and appropriate care. *Id.* ¶ 15. However, after transferring Woodland to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("USMC-Springfield"), BOP employees negligently failed to provide the necessary sustenance and/or medical care. *Id.* ¶¶ 17-18, 55, 63. That neglect caused Woodland severe pain, hunger, and illness. *Id.* ¶¶ 18-19, 56, 64. It diminished and ultimately eliminated his chances for recovery, and proximately caused his premature death on January 29, 2006. *Id.* ¶¶ 19, 56, 64.

## **PROCEDURAL HISTORY**

Rico Woodland's injuries and death were proximately caused by the negligent conduct of BOP employees at FCI-Allenwood in Pennsylvania and USMC-Springfield in Missouri. That negligent conduct gave rise to four legal claims against the United States:

2

- A Pennsylvania personal injury claim based on the BOP's negligent conduct in Pennsylvania. *See* SAC Count I. The claim survives Woodland's death and may be maintained by his Estate.[2]

- A Pennsylvania wrongful death claim based on the same negligent conduct in Pennsylvania. *See id.* Count II. This claim accrued to certain members of Woodland's family and may be maintained by the personal representative of his Estate for their benefit.[3]

- A Missouri personal injury claim based on the BOP's negligent conduct in Missouri. *See id.* Count III. This claim survives Woodland's death and may be maintained by his Estate.[4]

- A Missouri wrongful death claim based on the same negligent conduct in Missouri. *See id*. Count IV. This claim accrued to certain members of Woodland's family, including his mother Dianne Sledge.[5]

Plaintiff Steven Sledge's First Amended Complaint ("FAC") asserted only the Pennsylvania personal injury claim. FAC ¶¶ 27-35.[6] It did not assert the Missouri personal injury claim, the Pennsylvania wrongful death claim, or Dianne Sledge's Missouri wrongful death claim, because at the time those claims had not been administratively exhausted. However, in the interests of fair notice and efficient case management, the FAC noted the additional claims, *id.* ¶ 24-26, noted the administrative claims filed on November 29, 2006, *id*., and included copies of the administrative claims. *Id*. Exh. E-G. The FAC also explained that, if

---

[2] *Tulewicz v. Southeastern Pennsylvania Transp. Authority*, 606 A.2d 427, 431 (Pa. 1992).

[3] *Id*.

[4] V.A.M.S. § 537.020(1) (governing "survival actions" surviving the death of the plaintiff).

[5] V.A.M.S. § 537.080 (governing wrongful death actions).

[6] Plaintiff filed a *pro se* Complaint on April 24, 2006, and moved for appointed counsel. The Court granted Plaintiff's motion on July 10, 2006, and appointed the undersigned to represent Plaintiff. The undersigned noted that only the Pennsylvania personal injury claim was administratively exhausted (and that Plaintiff Steven Sledge lacked standing to assert the Missouri wrongful death claim). Consequently, counsel timely submitted additional administrative claims and filed Plaintiff's First Amended Complaint.

their administrative claims were denied, Dianne Sledge and Plaintiff Steven Sledge would assert those claims in this Court. FAC ¶ 24-26.

That contingency has come to pass. The BOP denied the Pennsylvania wrongful death claim on May 31, 2007, asserting that the claim was barred by the two-year statute of limitations. SAC ¶ 29. The BOP denied the Missouri personal injury claim on May 24, 2007. SAC ¶ 30. Finally, the BOP denied the Missouri wrongful death claim on May 24, 2007. SAC ¶ 30. Consequently, each of the four claims described above has now been administratively exhausted and Plaintiff Steven Sledge now seeks leave to amend the complaint and add Dianne Sledge as an additional plaintiff.

## ANALYSIS

Plaintiff's proposed Second Amended Complaint ("SAC") asserts two new claims by Plaintiff Steven Sledge and one new claim by proposed plaintiff Dianne Sledge. The SAC also provides notice of two additional administrative claims. Those claims are not now asserted in this Court—they have not yet been administratively exhausted—but their underlying facts are closely related to the facts at issue in this action. Finally, the SAC includes minor clarifications and additional facts relevant to Counts I through IV.

While technically discrete, Steven Sledge's and Dianne Sledge's proposed and existing claims are substantively intertwined and practically inseparable. They require testimony from the same witnesses and involve overlapping legal and factual issues (including the proximate causes of Woodland's injuries and death, the government's asserted affirmative defenses, and apportionment of fault and damages).[7] Moreover, Plaintiff Steven Sledge and proposed plaintiff

---

[7] While Steven Sledge and Dianne Sledge are entitled to file separate actions for each claim, all of their claims arise "out of the same transaction, occurrence, or series of transactions or

4

Dianne Sledge have acted promptly and without any improper motive.  They provided Defendant and this Court notice of the pending administrative claims—so as to allow efficient case management and prevent unnecessary litigation—and filed this motion promptly, once the claims were administratively exhausted and after obtaining Defendant's consent.

## CONCLUSION

For the foregoing reasons, leave to amend is appropriate under Federal Rules of Civil Procedure 15, 20 and 21.  Plaintiff respectfully requests that the Motion be granted.

This 22nd day of June, 2007.            Respectfully submitted,

/s/ *Thomas F. Connell*
Thomas F. Connell   DC Bar #289579
Demian S. Ahn  DC Bar #491109
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C.  20005
(202) 663-6000

*Attorneys for Plaintiff Steven Sledge and for Dianne Sledge*

---

occurrences" and involve common "question[s] of law or fact."  Fed. R. Civ. P. 20(a).  The interests of judicial economy support the conclusion that all of these matters, which arise out of common facts, should be considered together in a single action.  *See, e.g.*, *Childers v. Mineta*, 205 F.R.D. 29, 33 (D.D.C. 2001) ("granting leave to amend and thereby combining two civil actions would promote judicial economy").