IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN D. SLEDGE, In His Capacity As Personal Representative Of The Estate Of RICO WOODLAND, Deceased; And DIANNE D. SLEDGE,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 1:06-CV-00742-PLF |

## MOTION TO AMEND THE COMPLAINT

Pursuant to Federal Rules of Civil Procedure 15 and 18(a), and Local Civil Rules 7(i) and 15.1, Plaintiffs respectfully request leave to file a Third Amended Complaint. Pursuant to Local Civil Rule 7(m), counsel for Plaintiffs contacted counsel for Defendant and provided Defendant a copy of the Third Amended Complaint. Defendant does not consent to the filing of the Third Amended Complaint. An original of the Third Amended Complaint is attached to this motion, along with a proposed order granting the motion. For the reasons set forth in Plaintiffs' Memorandum of Points and Authorities, which is filed contemporaneously herewith, Plaintiffs respectfully request that the Court grant the Motion.

In addition, Plaintiffs respectfully request that the Court adopt the briefing schedule set forth in the proposed order. This schedule is identical to the briefing schedule previously agreed upon by the parties and ordered by this Court in relation to the Second Amended Complaint.

This 7th day of September, 2007.                                        Respectfully submitted,

1

/s/ *Thomas F. Connell*
Thomas F. Connell   DC Bar #289579
Demian S. Ahn  DC Bar #491109
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C.  20005
(202) 663-6000

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEVEN D. SLEDGE, In His Capacity As Personal Representative Of The Estate Of RICO WOODLAND, Deceased; And DIANNE D. SLEDGE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 1:06-CV-00742-PLF |

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFFS'
MOTION TO AMEND THE COMPLAINT**

This case began as a handwritten *pro se* complaint, filed on April 24, 2006 by Plaintiff Steven Sledge as personal representative of Estate of Rico Woodland. On July 10, 2006, this Court appointed the undersigned counsel to represent Plaintiff Steven Sledge. Shortly thereafter, on November 30, 2006, Plaintiff Steven Sledge filed the First Amended Complaint. Since being appointed, the undersigned counsel has worked to promptly identify all the relevant claims and ensure that they were pursued and exhausted administratively. This process of identifying claims and ensuring administrative exhaustion has, naturally, led to some delay. Defendant consented to the filing of the Second Amended Complaint ("SAC"), which followed the exhaustion of three such claims.[1] In each of Plaintiffs' amendments, they have made clear, so as to provide fair

---

[1] Dianne Sledge was added as a plaintiff with the filing of the SAC on June 27, 2007.

1

notice and allow efficient case management, their intention to systematically bring all claims into a single action.

Plaintiffs are now at the end of this process, seeking leave to file an amendment that would add two claims that were just exhausted administratively on July 20, 2007.[2] No other administrative claims remain pending. While Plaintiffs do not yet have access to many important documents, they do not at this time anticipate filing any additional claims against the United States. Accordingly, Plaintiffs respectfully request that the Court grant leave to file the Third Amended Complaint ("TAC"). In addition, Plaintiffs respectfully request that the Court adopt the same briefing schedule for the TAC that was previously agreed upon by the parties and ordered by this Court with regard to the SAC.

## **FACTUAL BACKGROUND**[3]

On October 15, 2002, while he was incarcerated at Federal Correctional Institution-Allenwood ("FCI-Allenwood"), Rico Woodland was brutally attacked in his cell. TAC ¶ 10. The attack was enabled and caused by the negligence of Federal Bureau of Prisons ("BOP") employees. *Id*. ¶¶ 12-13, 42, 51. Before the attack, BOP employees knew—or, but for their negligence would have known—that Woodland was in grave danger. *Id*. ¶ 12. During the attack, BOP employees knew—or, but for their negligence would have known—that Woodland was being assaulted. *Id*. ¶ 13. These and possibly other negligent failures allowed Woodland's

---

[2] Pursuant to Local Civil Rule 7(m), counsel for Plaintiffs contacted Defendant and provided Defendant a copy of the attached Third Amended Complaint. *See* Attachment 1 (August 24, 2007, Letter to Assistant U.S. Attorney Marian L. Borum). Defendant notified Plaintiff that it would not consent to the motion.

[3] The allegations herein are set forth in the TAC. For purposes of this Motion, the Court need not find such facts.

assailants the opportunity and the time—as much as thirty minutes—to beat Woodland within an inch of his life.  *Id*. ¶¶ 11-13, 42, 51.

Woodland suffered grave injuries during the attack, including massive brain damage that left him comatose for several months.  *Id*. ¶ 14.  When he later regained consciousness, he endured terrible and constant pain.  *Id*.  Nevertheless, his condition improved while he was hospitalized at the Fort Worth Federal Medical Center in Fort Worth, Texas.  *Id*. ¶ 15.  He was able to resume contact with his family, including his mother Dianne Sledge, his daughter Angelique Higgins, his sister Teresa Sledge, and Plaintiff Steven Sledge, his brother.  *Id*. ¶ 16.

Woodland might have recovered from many of his injuries if the BOP had provided him adequate sustenance and appropriate care.  *Id.* ¶ 15.  However, after transferring Woodland to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("USMC-Springfield"), BOP employees negligently failed to provide the necessary sustenance and/or medical care.  *Id*. ¶¶ 17-18, 58, 66.  That neglect caused Woodland severe pain, hunger, and illness.  *Id*. ¶¶ 18-19, 59, 67.  It diminished and ultimately eliminated his chances for recovery, and proximately caused his premature death.  *Id*. ¶¶ 19, 59, 67.

After Woodland complained to his family that he was receiving inadequate care at USMC-Springfield, Plaintiff Dianne Sledge, along with her daughter (Woodland's sister) Teresa Sledge, sought to visit Woodland at USMC-Springfield.  *Id*. ¶¶ 20-21.  They requested and received approval from the responsible Missouri Medical Center Employees.  *Id*. ¶ 21.  Thereafter, on the approved dates in November 2005, and at great personal expense on borrowed funds, they traveled more than one thousand miles by bus from Washington, D.C., to USMC-Springfield in Springfield, Missouri.  *Id.*  When Dianne and Teresa Sledge arrived at USMC-Springfield, they identified themselves as Woodland's mother and sister, explained that they had

3

previously received permission to visit Woodland, and asked to see Woodland. *Id*. ¶ 22. Missouri Medical Center Employees were aware of the distance Dianne and Teresa Sledge had traveled and the expenses they had incurred. *Id*. ¶ 23. Missouri Medical Center Employees were also aware of Woodland's failing health—and therefore knew or should have known that Dianne Sledge and Rico Woodland might never have another opportunity to see each other again. *Id.* Nonetheless—and despite previously approving visitation—Missouri Medical Center Employees arbitrarily, irrationally and/or invidiously refused to allow Dianne Sledge to see her son. *Id.* One of the Missouri Medical Center Employees said that, although she could arrange a visit with Woodland, she would not. *Id.*

The refusal by Missouri Medical Center Employees to allow Dianne Sledge and Rico Woodland to visit caused both Woodland and Dianne Sledge to suffer severe emotional distress. *Id*. ¶¶ 25-26. Moreover, had Dianne and Teresa Sledge been allowed access to Woodland, they would have discovered first-hand the inadequacies in the care, treatment and sustenance Woodland was receiving. *Id*. ¶ 24. They would have been able to advocate on Woodland's behalf, and might have compelled Missouri Medical Center Employees to provide adequate sustenance and care—and thereby saved Woodland's life. *Id.* Instead, Dianne Sledge never saw her son again. *Id*. ¶ 23. Two months after he was denied the opportunity to see his mother, on January 29, 2006, Rico Woodland died in federal custody. *Id*. ¶ 27.

## **RELEVANT PROCEDURAL HISTORY**

Plaintiffs filed the SAC on June 27, 2007. *See* SAC (Dkt. No. 21). The SAC asserts four claims based on the negligent conduct of BOP employees at FCI-Allenwood in Pennsylvania and USMC-Springfield in Missouri:

- A Pennsylvania personal injury claim based on the BOP's negligent conduct in Pennsylvania. *See* SAC Count I.

4

- A Pennsylvania wrongful death claim based on the same negligent conduct in Pennsylvania.  *See id.* Count II.

- A Missouri personal injury claim based on the BOP's negligent conduct in Missouri.  *See id.* Count III.

- A Missouri wrongful death claim based on the same negligent conduct in Missouri.  *See id*. Count IV.

Before filing the SAC, Plaintiffs exhausted the administrative remedies for Counts I-IV. *See id.* ¶¶ 29-31.  However, Plaintiffs had not yet exhausted administrative remedies for the claims underlying proposed Counts V and VI.  Thus, on June 14, 2007, Plaintiffs timely submitted two administrative claims for intentional and/or negligent infliction of emotional distress based on the Missouri Medical Center Employees' arbitrary, irrational, and/or invidious refusal to allow Dianne Sledge permission to visit Rico Woodland.  SAC ¶ 32.  Plaintiffs did not assert the claims for intentional and/or negligent infliction of emotional distress in the SAC because, at the time, the claims had not been administratively exhausted.  However, in the interests of fair notice and efficient case management, the SAC noted the additional claims, *id.* ¶ 20-24, noted the administrative claims filed on June 14, 2007, *id.* ¶ 32, and included copies of the administrative claims.  *Id*. Exh. K.  The SAC also explained that, if their administrative claims were denied, Plaintiffs might assert those claims in this Court.  SAC ¶ 32.[4]

The BOP denied Plaintiffs' administrative claims on July 20, 2007.  TAC ¶¶ 34-35, Exh. L, Exh. N.  The claims were thereby administratively exhausted.  Plaintiffs therefore file this

---

[4] Similarly, in the interests of fair notice and efficient case management, Plaintiff Steven Sledge's First Amended Complaint noted all administrative claims pending at that time and explained that, if these claims were denied, Plaintiff Steven Sledge and Dianne Sledge would assert them in this Court.  *See* First Amended Complaint (Dkt. No. 14) ¶¶ 24-26, Exh. E-G.

5

motion seeking leave to amend the complaint to add Counts V and VI.[5] Plaintiff Steven Sledge (in his capacity as Personal Representative of the Estate of Rico Woodland) asserts Count V, which seeks damages for the intentional and/or negligent infliction of emotional distress on Rico Woodland.[6] Plaintiff Dianne Sledge asserts Count VI, which seeks damages for the intentional infliction of emotional distress, on her own behalf.

## ARGUMENT

Plaintiffs' proposed Counts V and VI arise from the same factual context, concern the same parties, and involve many of the same witnesses as Counts III and IV. Thus, while Plaintiffs are entitled to file a separate action asserting Counts V and VI, the interests of justice and judicial economy would be better served by amending the existing complaint. Moreover, Plaintiffs have asserted each claim in good faith and without delay; the newly-exhausted claims are not futile; and the amendments would not unfairly prejudice Defendant. Plaintiffs respectfully submit that the Motion should therefore be granted.

### A.   The Legal Standard

Federal Rule of Civil Procedure 15(a) governs motions for leave to amend the complaint. It provides in relevant part that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is liberally granted under this standard. *See Islamic American Relief Agency v. Gonzales*, 477 F.3d 728, 738 (D.C. Cir. 2007); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998); *see also Davis v. Liberty Mut.*

---

[5] Plaintiffs' Third Amended Complaint incorporates proposed Counts V and VI, as well as minor clarifications and additional facts relevant to those counts. Plaintiffs do no propose any amendments to the allegations underlying Counts I through IV.

[6] This claim survives Woodland's death and may be maintained by his Estate. *See* V.A.M.S. § 537.020(1) (governing "survival actions" surviving the death of the plaintiff).

*Ins. Co.*, 871 F.2d 1134, 1136-37 (D.C. Cir. 1989) ("It is common ground that Rule 15 embodies a generally favorable policy toward amendments.").

Federal Rule of Civil Procedure 18(a), which governs the joinder of claims, provides that a "party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Fed. R. Civ. P. 18(a). In short, Rule 18 "permits the claimant to join all claims the claimant may have against the defendant regardless of transactional relatedness." *M.K. v. Tenet*, 216 F.R.D. 133, 141 (D.D.C. 2002) (quoting 3 MOORE'S FEDERAL PRACTICE § 21.02[1] (3d ed. 2000)).

> **B.    Plaintiffs' Proposed and Existing Claims Should Be Considered Together In The Same Action Because They Involve The Same Facts, Witnesses, And Legal Issues**

Plaintiffs' proposed Counts V and VI are factually and legally related to pending Counts III and IV. Not only do the claims underlying Counts V and VI concern the same parties as Counts III and IV, but they arise from the same factual context. First, Dianne Sledge sought to visit Woodland because she was concerned about his health and the adequacy of the care he was receiving at USMC-Springfield—the same care that is the subject of Counts III and IV. Second, it is likely that witnesses to Woodland's treatment in Missouri also have discoverable information about the decision to prevent Dianne Sledge from visiting Woodland. Third, the proposed and pending claims involve overlapping legal and factual issues—including the deterioration in Woodland's health and the proximate causes of Woodland's death; the government's asserted affirmative defenses; and apportionment of fault and damages.

Thus, while Plaintiffs are entitled to file separate actions for each claim, the interests of judicial economy—and common sense—strongly support the conclusion that all of these matters should be considered together in a single action. *See, e.g., Childers v. Mineta*, 205 F.R.D. 29, 33

7

(D.D.C. 2001) ("granting leave to amend and thereby combining two civil actions would promote judicial economy").

      **C.**    <u>**There Is No Compelling Reason To Require Plaintiffs To File Separate Actions Asserting Their Additional Claims**</u>

As this Court explained in *Childers*, "to deny leave to amend is an abuse of discretion unless the court provides a sufficiently compelling reason," such as undue delay, bad faith, previously deficient amendments, futility of amendment, or undue prejudice to an adverse party. 205 F.R.D. at 31. There are no such "compelling reasons" here.

*First*, Plaintiffs have acted promptly and without any improper motive. Their claims were timely and properly submitted to the BOP for administrative relief. They provided Defendant and this Court notice of the pending administrative claims, so as to allow efficient case management and prevent unnecessary litigation. Moreover, after receiving notice that the claims had been denied administratively, Plaintiffs (by their counsel) promptly contacted Defendant to discuss amending the complaint. Plaintiffs filed this motion as soon as practicable after learning that Defendant would not consent to the amendment.

*Second*, the additional claims are not the product of previously deficient amendments, nor are they futile. Plaintiffs have properly amended their complaint after one or more administrative claims were filed or denied. Moreover, the allegations and claims in the TAC readily satisfy Rule 8(a)'s plain statement requirements. *See Howard v. Gutierrez*, 237 F.R.D. 310, 313 (D.D.C. 2006) (allowing amendment where plaintiff's proposed "complaint, with its detailed fact section, more than meets the plain statement requirements of Rule 8(a), and does clearly state a claim upon which relief can be granted").

*Third*, leave to file the TAC would not unduly or unfairly prejudice Defendant. Defendant has been on notice that the pending administrative claims—if denied—might be

8

asserted in this Court since at least June 22, 2007, when the Second Amended Complaint was filed. Moreover, because denying leave would compel Plaintiffs to file a new and separate lawsuit in this Court that will be closely related to the existing one, granting leave would reduce unnecessary litigation and minimize costs.

      **D.** **The Parties' Existing Briefing Schedule Should Not Be Altered**

As discussed above, Plaintiffs provided Defendant notice in the SAC of the claims in proposed Counts V and VI. In the interests of fair notice and the prevention of undue delay, Plaintiffs noted that they may assert the claims—should they be administratively denied—in this Court. The parties agreed to a briefing schedule that allowed Defendant until October 15, 2007 in which to answer, move, or otherwise respond to the SAC. Accordingly, if the Court grants Plaintiffs' motion to amend, Plaintiffs respectfully submit that the parties should adhere to the briefing schedule previously agreed upon with regard to the SAC.

## CONCLUSION

For the foregoing reasons, leave to amend is appropriate under Federal Rules of Civil Procedure 15 and 18. Plaintiffs respectfully request that the Motion be granted.

This 7th day of September, 2007.                                      Respectfully submitted,

                                                                         /s/ *Thomas F. Connell*_____
                                                                         Thomas F. Connell   DC Bar #289579
                                                                         Demian S. Ahn  DC Bar #491109
                                                                         WILMER CUTLER PICKERING HALE
                                                                         AND DORR LLP
                                                                         1875 Pennsylvania Ave., N.W.
                                                                         Washington, D.C.  20005
                                                                         (202) 663-6000

                                                                         *Attorneys for Plaintiffs*

ATTACHMENT 1

Case 1:06-cv-00742-PLF   Document 22   Filed 09/07/2007   Page 12 of 14

WILMERHALE

**Demian S. Ahn**

August 24, 2007

+1 202 663 6736 (t)
+1 202 663 6363 (f)
demian.ahn@wilmerhale.com

Marian L. Borum, Esq.
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
555 4th Street NW
Washington, D.C. 20530

    Re: Sledge v. United States, Case No. 1:06-CV-00742-PLF

Dear Ms. Borum:

I write this letter to confirm our conversation yesterday and—in the interest of avoiding unnecessary motions—to emphasize a few points about the two additional claims (Counts V and VI) asserted in plaintiffs' proposed Third Amended Complaint.[1]

First, plaintiffs have pursued each of their claims promptly and in good faith. They timely filed their administrative claims and, in the interests of fair notice, disclosed those claims in the Second Amended Complaint. *See* Second Amended Complaint at ¶ 32. Moreover, after receiving notice that the claims had been denied administratively, plaintiffs (by the undersigned counsel) promptly contacted defendant to discuss amending the complaint.

Second, as we discussed yesterday, plaintiffs do not at this time anticipate filing any additional claims against the United States. While plaintiffs do not yet have access to many important documents,[2] and while the court has not set a deadline for amended pleadings, we felt it would be helpful to convey our current understanding. Since being appointed counsel in this action, my firm has worked to promptly identify all the relevant claims and ensure that they were pursued and exhausted administratively. We believe, based on our current knowledge of the facts, that this will be the last amendment and that, after the amendment has been entered, we can promptly brief the Government's anticipated motion to dismiss.

Third, having exhausted the administrative remedies, plaintiffs are entitled to assert the claims in Counts V and VI in court, in a separate action. Plaintiffs could—without delay and without contested motions—file a new action in the U.S. District Court for the District of Columbia, and then seek to consolidate the two cases as related actions. But that would involve pointless costs and needlessly consume judicial resources: Counts V and VI arise from the same context,

---

[1] A copy of the proposed Third Amended Complaint is enclosed with this letter.
[2] For example, plaintiffs do not have access to Woodland's medical records, or the video recording that allegedly "shows [Ishmael Ford-Bey] on tape committing the offense" against Woodland, *United States v. Sparks et al.*, Crim. No. 4:03-CR354-02, Docket No. 12 at 1.

WILMERHALE

Marian L. Borum, Esq.
August 24, 2006
Page 2

concern the same parties, and involve many of the same witnesses as Counts III and IV. The interests of justice and judicial economy would, we think, be better served by amending the existing complaint, rather than having two separate but related suits pending in the same court.

For all of these reasons, we hope that upon reflection the defendant United States will consent to plaintiff's motion to file a Third Amended Complaint.

We understand that you need to discuss this issue internally. However, if we have not received a response by August 31, 2007, we will assume defendant's position has not changed and we will reluctantly file our motion the following business day.

Sincerely,

Demian Ahn

Enclosure