# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN D. SLEDGE, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      Civil Action No. 06-0742 (PLF) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER

Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully files this reply memorandum in response to Plaintiffs' Opposition to Defendant's Motion to Dismiss Third Amended Complaint or, in the Alternative, to Transfer ("Opp.").  For reasons stated in Defendant's motion and herein, Defendant respectfully reiterates its request that the Court dismiss this suit.  Alternatively, Defendant requests that the Court transfer this matter to a jurisdiction where it might have been brought "to protect the litigants, witnesses [as well as] the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 US. 612, 617 (1964).

## ARGUMENT

### I.  Plaintiffs Fail to Comprehend the Purpose of the Filing of a Motion to Dismiss.

Plaintiffs argue that Defendant's motion to dismiss is a "premature attempt to resolve the merits of the dispute before any discovery ha[s] occurred."  Opp. at 11. Plaintiffs incorrectly state that "[d]efendant's approach turns the Federal Rules on their head."  Id.  This argument clearly demonstrates Plaintiffs' failure to understand the federal rules regarding the filing of such motions.

Pursuant to Federal Rule of Civil Procedure 12(b):

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject

matter . . . .

Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction. In thousands of cases filed in the District Court for the District of Columbia, parties file dispositive motions when there is a basis to believe a matter is not properly before the court. Such filings are not an indication that a party is attempting to avoid discovery, it is an attempt to avoid the waste of time and judicial resources when claims cannot properly be heard. See Abu Ali v. Gonzales, 387 F.Supp.2d 16, 17 (D.D.C. 2005)(court has affirmative obligation to ensure that it is acting within scope of its jurisdictional authority). This time worn procedure "protects both plaintiff and defendant from burdensome and unnecessary discovery at a premature stage of the proceedings." Haase v. Sessions, 835 F.3d 902, 908 (D.C. Cir. 1987).

Plaintiffs state that defendant has made a facial challenge to their complaint and facial challenges are not proper under Rule 12(b)(1). Opp. at 12. Plaintiffs are wrong. A facial challenge attacks the factual allegations in the complaint and, is proper under Rule 12(b)(1). See Smith v. U.S., 518 F.Supp.2d 139, 145 (D.D.C. 2007).[1]

**II. Plaintiffs Are Not Being Asked to Prove the Merits of Their Claims.**

Plaintiffs state that "Defendant argues that every count should be dismissed because plaintiffs have failed to prove their claims." Opp. at 12. However, Defendant has not asked that Plaintiffs prove their claims; rather, Defendant properly has asked that Plaintiffs satisfy the requirement of establishing subject matter jurisdiction for their claims. Here, it is clear that Plaintiffs cannot do so. Plaintiffs lack

---

[1]Nevertheless, Defendant does not concede that it makes a facial challenge to the complaint. A factual challenge to the complaint under Rule 12(b)(1) is also proper. "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case . . . ." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (C.A.N.J. 1977). In a factual 12(b)(1) motion "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. The court has authority to resolve disputed jurisdictional facts through material outside the pleadings including documents, affidavits and other testimony without converting the motion into one for summary judgment under Rule 56. Calderon v. U.S., 123 F.3d 947, 951, n.2 (7th Cir. 1997). "Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset . . . as would occur with the denial of a summary judgment motion." Osborn v. U.S., 918 F.2d 724, 729 (8th Cir. 1990).

jurisdiction to bring Counts I, II, V and VI of the complaint because the counts are barred by the discretionary function exception of the Federal Tort Claims Act.  Moreover, Plaintiffs have failed to meet the basic pleading and statutory requirements for any of the counts to survive.  See. Fed. R. Civ. P. 8(a).

Plaintiffs also claim that they are entitled to discovery which "must be broad . . . consistent with the defense of a claim on the merits."  Opp. at 14.  Plaintiffs state that:

> this Circuit's binding precedent involving the application of the discretionary function exception *requires* that plaintiffs be given a full and fair opportunity at discovery before a ruling can be made on a motion to dismiss under Rule 12(b)(1).

See Opp. at 16(citing Ignatiev, 238 F.3d 464 (D.C. Cir. 2001); Loughlin, 393 F.3d 155 (D.C. Cir. 2004)(emphasis added)).  Plaintiffs cite two cases in support of their statement.  However, in the context of this case, this statement is misleading.

In Loughlin, Appellants challenged the district court's "limitati[on] of discovery to the existence of binding directives under prong one of the discretionary function exception." 393 F.3d at 166.  The Court of Appeals determined, however, that there was no basis for reversal of the district court's decision. The Court also found that: 1) appellants "*failed to cite* any regulations or policies that prescribed a nondiscretionary duty to warn[;]" and 2) the decision whether to warn was "fraught with . . . public policy considerations[;]. . . it required balancing 'competing concerns of secrecy and safety, national security and public health.'" Id. at 163, 64(internal citations omitted and emphasis added). Therefore, the action was barred by the discretionary function exception.

In Ignatiev, appellants claimed that the Secret Service had "internal objectives or policies that created the requisite mandatory obligation" "to provide foreign service missions with heightened security, beyond simply ordinary police protection." 238 F.3d at 466.  The Court of Appeals indicated that dismissal would have been appropriate under the discretionary function exception because there was no statutory or international law which required mandatory actions on the part of the government.  Id. However, because appellants had ***specifically stated in their claim*** that there may have been some internal

3

objectives or policies, discovery of these rules, not facts, was permissible.  Id. at 466, 467.

Here, in their Third Amended Complaint, Plaintiffs failed to specifically state that there were some internal policies that created some mandatory obligation regarding the actions that took place at the Federal Correctional Institution in Allenwood, Pennsylvania ("FCI-Allenwood") or the U.S. Medical Center for Federal Prisoners in Springfield, Missouri ("USMCFP-Springfield").  In fact, Plaintiffs never mentioned any internal polices at all.  In their *opposition*, Plaintiffs now attempt to make this argument.  See Opp. at 23("Plaintiffs *believe* similar post orders governed FCI-Allenwood employees.").  Because Plaintiffs failed to *state* this *in their claim* - - in the Third Amended Complaint, or even in the Second or First Amended Complaints - - they cannot do so now.  Plaintiff has had three attempts to assert that there were some mandatory policies in place.  Certainly, if they had intended to make this claim, they would have done so.  Moreover, a mere allegation that some undefined  "mandatory" policies or requirements have been breached is insufficient to defeat the first prong of the discretionary function exception.  See U.S. v. Gaubert, 499 U.S. 315, 329-330 (1991); ALX El Dorado, Inc. v. Sw Sav. and Loan Assoc., 36 F.3d 409, 411-12(5ᵗʰ Cir. 1994)(per curiam)(where, in the complaint, plaintiffs "alleged only some generalized failures to follow mandatory rules . . . [and] . . . failed . . . to point to even one relevant mandatory limitation on . . . statutory discretion[, s]uch averments [were] insufficient, in themselves, to defeat the first part of the Gaubert test."); Johnson v. U.S., 47 F.Supp.2d 1075, 1080 (S.D. Ind. 1999)("[p]laintiffs . . . have failed to link their claims with any facts or specific regulatory or policy guidelines that would call into doubt the discretionary nature of the Marshal's actions").  Cf. McNeily v. U.S., 6 F.3d 343, 349 (5ᵗʰ Cir. 1993)(Rule 12(b) dismissal affirmed because vague and conclusory allegations were insufficient to defeat the sovereign immunity of the United States).[2]  Clearly, then, Plaintiffs are not entitled to discovery

---

[2]Plaintiffs also cite to Triestman v. BOP, in which a prisoner brought an FTCA action when he was attacked by his roommate in a locked cell.  470 F.3d 471 (2ⁿᵈ Cir. 2006).  The BOP had in place a program statement which indicated that signaling devices will be available for inmate use in all locked housing units in certain circumstances.  Id at 472. Treistman alleged that the BOP failed to "adhere[] to its own regulations."  Id.  "Treistman's submissions . . . focused on the staffing policy in place at the institution."  Id. at 472-73.  The Court of Appeals noted that, in the relevant counts of his complaint,

"consistent with the defense of a claim on the merits." Opp. at 14.[3]

### III. Claims Based Upon the Actions of FCI-Allenwood Employees (Counts I and II)

A. <u>No Duty of Care to Woodland Was Negligently Breached Under Pennsylvania Law</u>

Counts I and II of the Third Amended Complaint allege that employees at FCI-Allenwood

breached their duty of care to Woodland. <u>See</u> Third Amended Complaint ("TAC") at §§39-42, 57-58. The

investigation of the incident at FCI-Allenwood revealed that during the morning of October 15, 2002,

Woodland and Sparks engaged in a mutual, physical altercation. <u>See</u> Defendant's Motion to Dismiss

("MTD"), Exhibit A, ¶5. Woodland did not notify the staff of this altercation nor discuss with them any

concerns he had about his physical safety. <u>Id</u>. at ¶6. In addition, Woodland hid from staff the fact that the

altercation occurred. <u>See Id</u>., Exhibit F. Between 12:41 p.m. and 12:56 p.m., Woodland and Sparks

engaged in another physical altercation inside of cell 109. <u>See Id</u>., Exhibit A at ¶7. During this

altercation, Inmate Ishmael Ford-Bey held the cell door closed. <u>Id</u>. Another inmate positioned two cell

doors at ninety degree angles to interfere with the view of the surveillance cameras on that range. <u>See Id</u>.,

Exhibit A at ¶8. This inmate also interfered with the unit officer attempting to perform his duties by

---

Treistman manifestly argued that the prison's staffing policy was negligent, but had not "expressly articulated the *separate argument* that [the prison] employees were negligent in their enforcement of the policy." <u>Id</u>. at 475 (emphasis added). The Court noted that it had an obligation to "make reasonable allowances to protect <u>pro se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training." <u>Id</u>. Therefore, "*under the circumstances of th[e] case* . . . and in light of the 'special solicitude' that is appropriately accorded *pro se litigants* . . . Treistman's submissions [were] read to assert the latter claim." <u>Id</u>. (emphasis added)(internal citation omitted). The court then read a 'negligent guard' theory into the <u>pro se</u> complaint and remanded the matter to the district court. The Court did not express an opinion as to the ultimate merits of the claim.

Here, Plaintiffs' counsel can hardly argue that they should be accorded the "special solicitude that is . . . accorded <u>pro se</u> litigants." <u>Id</u>. A "negligent guard" or "garden variety" negligence argument cannot now be asserted. This is true particularly in the absence of specific guidelines for conduct by BOP employees in administering their duty to safeguard the prisoners.

[3]In <u>Smith</u>, the court stated that a plaintiff may "be given an opportunity for discovery of facts *necessary to establish jurisdiction*" when a *factual* not a facial challenge is made. 518 F.Supp.2d at 145 (emphasis added). Clearly, then, even if Plaintiffs were entitled to discovery, which they are not, discovery would be limited to the jurisdictional issues in the complaint.

requesting a broom and dust pan from another location in order to delay the officer from discovering the fight or Woodland.  Id.[4]  Under circumstances in which FCI-Allenwood employees were prevented from performing their duties, they cannot be said to have negligently breached any duty to Woodland under Pennsylvania law.  See id. at 16-17. More specifically, they cannot be said to have breached a duty to Woodland to protect him from a harm about which they were made to be unaware, and Plaintiffs are not entitled to relief on Counts I and II.  See Fed. R. Civ. P. 8.

     B.  Even if Plaintiffs Could Show That They Are Entitled to Relief Under Pennsylvania Law, Counts I and II are Barred by the Discretionary Function Exception to the Federal Tort Claims Act.

In Counts I and II, Plaintiffs allege that FCI-Allenwood employees knew or should have known that individuals posed a threat to Woodland and that Woodland was being attacked.  Therefore, they owed a duty of care to Woodland and breached that duty.  See TAC at §§39-42, 57-58.  While Plaintiffs attempt to claim that they have not alleged that FCI-Allenwood employees failed to protect Woodland, see Opp. at 20, this is a classic failure to protect argument.  See e.g. Santana-Rosa v. U.S., 335 F.3d 39 (5th Cir. 2003)(discretionary function barred inmate's claim against BOP alleging that prison staff failed to take adequate precautions to prevent attack); Buchanan v. U.S.,915 F.2d 969 (5th Cir. 1990), reh'g denied, 921 F.2d 273 (5th Cir. 1990)(BOP employees' decisions regarding internal security during prison uprising

---

[4]Plaintiffs cite to a Statement of Facts in Support of Guilty Plea in the case of U.S.  v. Jesse Sparks, and state that Defendant did "not address plaintiffs' allegations or evidence that the fight lasted nearly 30 minutes."  Opp. at 8 and Exhibit 2, ¶7(additional citations omitted).  However, the Statement of Facts indicates that Sparks "entered the[] cell approximately 30 minutes before Woodland was found . . . ."  Id. It does not state that the assault occurred immediately upon Sparks entering the cell, and therefore lasted 30 minutes.

Plaintiffs also attempt to confuse the issues and then claim that there are disputed issues of material fact. Specifically, Plaintiffs state that defendant indicated that "a third inmate . . . 'positioned two cell doors to a ninety degree angle, in an effort to interfere with the view of the surveillance camera[,]" but that effort was unsuccessful because the Motion for Detention in U.S. v. Ishmael B. Ford-Bey indicates that "[t]he evidence shows the Defendant caught on tape committing the offense."  Id. at 8 and Exhibit 4, ¶3(citing MTD, Exhibit A.)  However, Ford-Bey was charged with aiding and abetting the assault.  He physically held the cell door closed during the assault.  The surveillance camera caught him on tape holding the door closed, it did not depict the assault taking place.

6

protected as discretionary); <u>Mitchell v. U.S.</u>, 149 F.Supp.2d 1111 (D.Ariz. 1999)(Plaintiff's suit based upon BOP's alleged failure to prevent assault by other inmates dismissed because discretionary function exception protects day-to-day security decision involving the number and position of guards).

Under the first prong of the discretionary function analysis, the Court must determine if there were federal statutes, regulations, or procedures in place that required BOP employees to follow a particular course of action in protecting Woodland from other inmates. <u>See</u> <u>Drake v. FAA</u>, 291 F.3d 59, 72-73 (D.C. Cir. 2002); <u>Cope v. Scott</u>, 45 F.3d 445, 448 (D.C. Cir. 1995).  Here, there were not.

As stated in Defendant's Motion to Dismiss, 18 U.S.C. § 4042(a)(3) "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." <u>Calderon</u>, 123 F.3d 947, 950 (7th Cir. 1997). <u>See</u> MTD at 21-22. Instead, prison officials are given considerable discretion on how best to use their limited resources to fulfill this responsibility.  The absence of specific guidelines of appropriate conduct by BOP employees in administering these duties, therefore, leaves judgment or choice to the employees.  <u>Buford v. U.S.</u>, 1999 WL 319078 at *4, n.2 (D.Kan. Apr. 28, 1999)(where method, extent, and thoroughness of procedures used to protect prisoners were left unspecified, there was an element of discretion in how guards could satisfy 18 U.S.C. § 4042).

In addition, 28 C.F.R. § 541 provides no mandate as to specifically how the staff duties are to be fulfilled.  <u>See</u> MTD at 22; <u>Calderon</u>, 123 F.3d at 949 (none of the federal regulations cited within 28 C.F.R. § 541 sets forth a mandatory, non-discretionary action that was required to be taken prior to the attack on plaintiff by another inmate).  Because no statutes, regulations or procedures exist which require FCI-Allenwood employees to follow a specific course of action when protecting and supervising inmates, the first prong of the discretionary function analysis is satisfied.

Under the second prong of the discretionary function analysis, the court must determine whether the BOP's management decisions regarding the supervision and protection of inmates were grounded in social, economic or political policy.  <u>Gaubert</u>, 499 U.S. at 323; <u>see</u> <u>Sloan v. HUD</u>, 236 F.3d 756, 761

(D.C.Cir. 2001). In making decisions regarding the appropriate security measures within FCI-Allenwood, BOP officials must "balance the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison . . . ." Calderon, 123 F.3d at 951. These decisions regarding the manner in which FCI-Allenwood is staffed, and how inmates are monitored and protected, necessarily involve judgment and discretion. See Dykstra v. BOP, 140 F.3d 791, 796 (8th Cir. 1998)("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors which are inherently grounded in social, political, and economic policy."). In fact, the Supreme Court has stated that, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349, n.14 (1981).

As both prongs of the discretionary function exception have been satisfied, Counts I and II of the Third Amended Complaint must be dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); Cope, 45 F.3d at 448 (where exception to FTCA waiver applies, the Court lacks subject matter jurisdiction); Baird v. U.S., 653 F.2d 437, 439 (10th Cir. 1981)(discretionary function exception is a matter of subject matter jurisdiction), cert. denied, 454 U.S. 1444 (1982).

Plaintiffs state that "[d]efendant does not describe any specific decision by anyone at FCI-Allenwood, let alone a decision involving policy judgment, that exclusively caused the October 15, 2002, attack on Woodland." Opp. at 25. Plaintiffs misapprehend the second prong of the discretionary function exception. The defendant is not required to describe any specific decision. Rather, the focus of the inquiry is on the nature of the actions taken or whether they are susceptible to policy analysis. Gaubert, 499 U.S. at 323; see Sloan, 236 F.3d at 761. If the individual's actions are based upon the purposes that the statutory or regulatory scheme seeks to accomplish, they fall within the discretionary function exception. See Gaubert, 499 U.S. at 326 n.7.[5]

---

[5]Plaintiffs also state that "'once a threat of violence was brought to the attention of [prison] officials, they were required to investigate the threat and determine whether [the plaintiff] was in danger.'" Id.(citing Barrett, 845 F.Supp. 774, 781 (D.Kan. 1994). Plaintiffs only contend that they "*believe* similar obligations governed the [prison employees at] FCI-Allenwood . . . ." Opp. at 23 (emphasis added).

C.  Plaintiffs' Claims of "Garden Variety Negligence Fail As Well.

Plaintiffs now assert that their claims are directed at "garden variety negligence by individuals breaching their mandatory duties[,]" and the first prong of the discretionary function exception has not been met.  Opp. at 20.  Plaintiffs cite to Garza v. U.S., 161 Fed. Appx. 341 (5th Cir. 2005), to establish their contention.  Garza was injured during a fight between rival gangs in prison, and alleged that the Government was obligated to keep him safe from harm pursuant to 18 U.S.C. § 4042.  Id. at 343.  The Court, nevertheless, held

> We join our sister circuits in recognizing that . . . section 4042's mandate to protect prisoners . . . define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable.

Id.(citing Montez v. U.S., 359 F.3d 392, 396 (6th Cir. 2004)(additional citations omitted)).

Garza also alleged that a particular guard failed to follow the Post Orders "pertaining to patrolling, supervising, and prohibiting large groups of inmates to gather . . . ."  Id. at 344.  The Court granted the defendant's 12(b)(1) motion finding that the portion of the Post Order which indicated that inmates

> should not be allowed to gather in large groups . . . lack[ed] a specific directive as to what constituted a large group [and] permitted discretionary choice sufficient to satisfy the first prong of the Berkovitz-Gaubert test. . . [T]he case-by-case decision to permit inmates to congregate or not depends on the balance of public and prisoner safety with the need to permit prisoner interaction and socialization.

Id. at 345.  However, the court determined that the portion of the Post Order which stated "[d]uring closed movement, you **will** patrol the recreation yard . . . ." id. at 345(emphasis added), was "straight-forward and unambiguous" and set a course of action for the post guard on duty to follow.  Id. at 344.  Therefore,

---

However, Plaintiffs do not dispute the fact that no threat of violence was ever brought to the attention of the FCI-Allenwood employees after the earlier incident, and that fact is conceded.  See Buggs v. Powell, 293 F.Supp.2d 135, 141 (D.D.C. 2003)("It is undisputed in this Circuit that when a Plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised, a court may treat those arguments that the plaintiff failed to address as conceded".).

this guard's failure to adhere to this provision was not protected by the discretionary function exception.[6] In the matter at hand, however, there was no Post Order specifically setting a course of action for the FCI-Allenwood employees to follow and, even it there were, the employees were purposely made unaware that any assault was taking place.

    D.  Plaintiffs Confuse the Issues of Discretionary Function and Duty.

    Plaintiffs next argue that the "'jurisdictional' defense is fully intertwined with the merits of the case[,] . . . and can only be addressed at the same time as the merits." Opp. at 14. Specifically, Plaintiffs contend that the issue of negligence on the part of BOP employees is intertwined with the issue of jurisdiction under the FTCA. However, "jurisdiction and the merits [of the case] are intertwined if a decision on one would effectively decide the other." Vine v. Republic of Iraq, 459 F.Supp.2d 10, 19, n.7 (D.D.C. 2006)(citation omitted). Here, whether or not BOP employees were negligent does not effectively decide whether there is jurisdiction under the FTCA. Similarly, whether or not there is jurisdiction under the FTCA does not effectively decide whether the BOP employees were negligent.

    Plaintiffs confuse the different and discrete discretionary function and duty issues. The issue of duty under state law is separate and distinct from the applicability of the discretionary function exception to the FTCA. If the discretionary function exception applies to the conduct at issue, the court lacks subject matter jurisdiction and need not reach the merits of the underlying state law cause of action. This was made clear in Autery v. U.S., in which plaintiff was killed when a black locust tree fell on his car as

---

[6]Plaintiffs assert that the Court must examine the actions of each separate FCI-Allenwood employee to determine if that person possessed the discretion to be protected. See Opp. at 18. However, "the contention that the day-to-day actions of correctional officers are not policy-based and so are outside the ambit to the discretionary function exception [has been rejected]." Palay v. U.S., 349 F.3d 418, 428 (7th Cir. 2003).

In an FTCA suit, Palay claimed that the prison officials negligently assigned him to a holdover unit for convicted prisoners rather than a pretrial detainee unit and, as a result, he was assaulted. Id. at 421. The court remanded the matter in Palay because the circumstances that made the fight possible may not have been the result of discretionary judgments but, for instance, of carelessness. However, Palay is not instructive, particularly in light of the fact that FCI-Allenwood employees attempted to perform their duties, but were prevented from doing so.

he was driving through a national park.  992 F.2d 1523 (11th Cir.), cert. denied, 511 U.S. 1081 (1994).

Reversing the district court, the Eleventh Circuit found that the discretionary function exception barred

the suit.  The Court stated:

> [t]he district court's inquiry . . . by asking whether the park officials had
> discretion to remove "hazardous" trees, begs the question . . . . The
> district court's analysis appears to collapse the question of whether the
> Park Service was negligent into the discretionary function inquiry . . . .
> The relevant inquiry here is whether controlling statutes, regulations and
> administrative policies mandated that the Park Service inspect for
> hazardous trees in a specific manner.  If not, then the Park officials'
> decision to employ a particular inspection procedure — and its execution
> of that plan — is protected by the discretionary function exception.

Id. at 1528.

Moreover, negligence is irrelevant to the discretionary function inquiry.  Title 28, United States

Code, Section 2680(a) insulates the United States from

> *any claim* . . . based upon the exercise or performance of the failure to exercise or perform
> a discretionary function or duty on the part of a federal agency or an employee of the
> Government, *whether or not the discretion be abused.*

28 U.S.C. § 2680(a)(emphasis added).  Where a government official or employee is performing a

discretionary function, the fact that he or she may perform it negligently does not render the exception

inapplicable.  See Gaubert, 499 U.S. at 334(Supreme Court noted that "[i]n the end, Gaubert's Amended

Complaint alleges nothing more than negligence. . . ."); Layton v. U.S., 984 F.2d 1496, 1502 (8th

Cir.1993)("Whether ... employees were negligent in making any ... decisions is irrelevant."); Kennewick

Irr. Dist. v. U.S., 880 F.2d 1018, 1029 ( 9th Cir.1989) ("[N]egligence is simply irrelevant to the

discretionary function inquiry."); Barnson v. U.S., 816 F.2d 549, 553 (10th Cir.), cert. denied, 484 U.S.

896 (1987) ("[f]actual issues concerning negligence are irrelevant to the central issue whether the federal

officials' actions were discretionary."); Miller v. U.S., 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S.

939 (1983)("[w]hether th[e discretionary function e]xception applies is a threshold issue, and analysis of

the exception must precede any negligence analysis."); <u>Morton v. U.S.</u>, 228 F.2d 431, 432 (D.C. Cir. 1956)("[T]o the extent that the allegations charge improper exercise of discretionary functions of the officers . . . , they come squarely within the [discretionary function] exception.").

### IV. Plaintiffs' Claims Based Upon the Actions of USMCFP-Springfield Employees Fail (Counts III and IV)

A. <u>Application of Pennsylvania Law</u>

1) Medical Malpractice Claim

Properly applying Pennsylvania choice of law rules, Pennsylvania law  applies to the claims based upon the actions of the USMCFP-Springfield employees. <u>See</u> MTD at 8-14. Under Pennsylvania law, a plaintiff is required to file a certificate of merit with his claim or within 60 days of filing it.  <u>See</u> Pa.R.Civ.P. 1042.3.  Here, Plaintiffs have failed to file the required certificate with their First, Second or Third Amended Complaints., or within 60 days thereafter.[7]  <u>See</u> MTD at 25-26. Therefore, Plaintiffs failed to comply with the Pennsylvania statutory requirements and Counts III and IV must be dismissed. <u>See</u> <u>Osorio v. U.S.</u>, 2007 WL 2008498, *1 (W.D. Pa. July 05, 2007)("The FTCA . . . makes the United States liable for the torts of negligence or medical malpractice under circumstances where Pennsylvania law would impose liability for those torts on a private party.")(citation omitted).

2) <u>Negligence Claim</u>

Having failed to meet the state statutory requirements, in their Opposition, Plaintiffs now allege that the allegations in Count III and IV were for medical malpractice *and* "simple negligence."  <u>See</u> Opp. at 40.  Whether Plaintiffs were making allegations of medical malpractice or allegations of negligence is unclear from the face of the Third Amended Complaint, or the First or Second Amended Complaints for that matter.  Moreover, the allegation made is insufficient to claim either that a duty to Woodland was negligently breached or that any alleged negligent breach of the duty was the proximate cause of

_____

[7]The Third Circuit has stated that federal courts have recognized the applicability of "preconditions that states may impose on a plaintiff's right to sue in state court" to diversity actions.  <u>Edelson v. Soricelli</u>, 610 F.2d 131, 135 (3rd Cir.1979).

Woodland's injury as required by Pennsylvania law. Federal Rule of Civil Procedure 8 requires a pleading to set forth "a short and plain statement of the claim *showing* that the pleader is *entitled to relief.* . . ." Fed. R. Civ. P. 8 (emphasis added). Plaintiffs have had three opportunities to make their pleading comply with this rule and have failed to do so. Again, Counts III and IV should be dismissed.[8]

    B. <u>Application of Missouri Law</u>

    Ignoring the law, Plaintiffs contend that Missouri law controls the analysis of Counts III and IV.[9] As Defendant indicated in its Motion to Dismiss, even if Missouri law applied to Counts III and IV, they still should be dismissed because Plaintiffs have failed to file the required affidavit with the complaint or within 90 days of filing it. <u>See</u> Mo. Rev. Stat. § 538.225.1; MTD at 27-29. Moreover, under Missouri law, the fact that Woodland died does not give rise to a presumption of medical negligence. <u>See</u> <u>Hurlock</u>

---

[8]Plaintiffs assert that Plaintiff Diane Sledge and Plaintiff Steven Sledge can both maintain wrongful death claims for the one death of Woodland. Plaintiffs state that, if Pennsylvania law applied, even though Plaintiff Diane Sledge is not the personal representative of Woodland, she would be entitled to maintain her wrongful death claim under Pa. R. Civ. P. 2202 because "an action for wrongful death shall be brought only by the personal representative . . . if no action for wrongful death has been brought within six months after the death of the decedent." Pa. R. Civ. P. 2202(a), (b). Plaintiff states that "no action was brought within six months of Woodland's death. Woodland died on January 29, 2006, and Count IV was not asserted until the Second Amended Compliant was filed . . . on June 25, 2007." Opp. at 34. Plaintiff is wrong. A wrongful death claim was asserted by Plaintiff Steven Sledge in the complaint which was filed with this Court on April 24, 2006, and alleged that if "the United States Bureau of Prisons had given . . . Woodland adequate medical care he would not have passed." <u>See</u> Complaint, Docket Entry No. 1.

[9]Plaintiffs state that Pennsylvania law should not govern Counts III and IV because the alleged negligence in Counts III and IV and Counts I and II are separated by three years and several hundred miles; involve different types of conduct and injuries; and arise out of claims in different regional offices of the BOP. Opp. at 29. This argument is without merit. The fact that the alleged acts of negligence occurred three years and several hundred miles apart is irrelevant. <u>See</u> <u>Sandek v. Mooney Aircraft</u>, 464 F.Supp.2d 439, 443-44 (E.D. Pa. 2006)(Georgia resident and representative of the estate filed suit in Pennsylvania against Mooney Aircraft and Honeywell International, Inc., where Sandeks were killed in a November 2006 airplane crash and the airplane and its parts were manufactured and assembled in 1987); <u>Hitchcock v. U.S.</u>, 665 F.2d 354 (D.C. Cir. 1981). The fact that different types of conduct and injuries were involved is of no moment. <u>See</u> <u>Simon v. U.S.</u>, 341 F.3d 193, 194 (3rd Cir. 2003)(estate of former Pennsylvania residents and victims of airline crash sued the United States for publishing a chart which incorrectly depicted an inactive landing approach at a Kentucky airport, *as well as* Indiana-based federal air craft controllers for failing to respond to the pilot's last-minute radio communications.) Finally, the fact that the counts arise out of claims in different regional offices of the BOP is immaterial as Plaintiffs are complaining about the conduct of employees of the Federal Bureau of Prisons under the FTCA.

v. Park Lane Med. Ctr., Inc., 709 S.W.2d 872, 883 (Mo.App.1985).  Therefore, Plaintiffs have failed to

show they are entitled to relief under the Missouri medical malpractice or negligence statutes, and their

claims must fail.  See MTD at 29; Fed. R. Civ. P. 8(a).[10]

### V.  Plaintiffs Must Comply With State Statutory Requirements

A.  State Statutory Requirements Do Not Conflict with the Federal Rules of Civil
    Procedure

Having recognized that they have failed to comply with any state statutory requirements for filing

suit, Plaintiffs now argue that "the state certification statutes are procedural devices which are

inapplicable to this federal action."  Opp. at 34.  Plaintiffs state that the state certification statutes

"directly conflict with the Federal Rules of Civil Procedure [so] the state laws must give way."  Id. at 35.

Specifically, Plaintiffs argue that the state statutes conflict with Federal Rules of Civil Procedure 16 and

26 which govern "the timing of discovery including expert discovery[,]" and Rule 37 which governs

"sanctions for noncompliance."  Id. at 36.  Plaintiffs are wrong.

Federal Rule 16 governs "Pretrial Conferences; Scheduling [and] Management" of cases.  Federal

Rule 26 governs, inter alia, Initial Disclosures, Disclosure of Expert Testimony, and Discovery Scope and

Limits.  Finally, Federal Rule 37 recites applicable procedures when one fails to participate in discovery.

None of these rules directly conflicts with the Pennsylvania and Missouri state law requirements.  The

state laws do not govern case management, timing and exchange of expert disclosures, or sanctions.

Rather, the state laws go beyond that which is required by the Federal Rules, and exist to assure that

medical malpractice claims that lack expert support or color of merit will be terminated at an early stage in

order "to protect the public and litigants from the cost of ungrounded medical malpractice claims."  Smith

v. Planned Parenthood of St. Louis Region, 225 F.R.D. 233, 239 (citing Mahoney v. Doerhoff Surgical

---

[10]The elements of negligence are 1- the existence of a duty on the part of the defendant to protect plaintiff
from injury; 2- the failure of the defendant to perform that duty; 3- that plaintiff's injury was proximately
caused by defendant's failure. Virginia D. v. Madesco Inv. Corp., 648 S.W.2d 881, 886 (Mo. 1983)(en
banc)..

Servs., Inc., 807 S.W.2d 503, 507 (Mo. 1991)(en banc)).[11]

More specifically, Pennsylvania law requires that the plaintiff or his attorney file a certificate of

merit signed by the attorney or other party that either:

> (1) an appropriate licensed professional **has supplied** a written statement that there exists
> a reasonable probability that the care . . . fell outside acceptable professional standards
> and that such conduct was a cause in bringing about the harm, or . . .

> (2) the claim that the defendant deviated from an acceptable professional standard is
> based solely on allegations that other licensed professionals for whom this defendant is
> responsible deviated from an acceptable professional standard . . .

Pa.R.Civ.P. 1042.3(a)(emphasis added).  Missouri law requires that:

> the plaintiff or his attorney file an affidavit with the court stating that he **has obtained** the
> written opinion of a legally qualified health care provider which states that the defendant
> health care provider failed to use such care as a reasonably prudent and careful health care
> provider would have under similar circumstances and that such failure . . .caused or
> directly attributed to cause the damages claimed . . . .

Mo. Rev. Stat. § 538.225.1(emphasis added).  Both Pennsylvania and Missouri law merely require that the

plaintiff be *in possession of* a written statement or file an affidavit that he is *in possession of* such a

statement.  Neither law requires that the written statement be prepared by an expert who is "employed to

give expert testimony in the case;" that the "identity" of the person be disclosed; or that a written report of

an expert containing specific information be provided to the other party.  Fed. R. Civ. P. 26(a)(2)(A), (B).

Neither law interferes with pretrial conferences, scheduling orders or the procedure by which discovery is

provided.  See Fed. R. Civ. P. 16.  Neither law impacts sanctions for not cooperating in that discovery.

See Fed. R. Civ. P. 37.  Therefore, it is clear that the state law requirements do not conflict with the

---

[11]Numerous federal courts have rejected arguments that similar statutes are in conflict with the Federal
Rules.  See, e.g., Chamberlain v. Giampapa, 210 F.3d 154 (3rd Cir. 2000)(New Jersey statute requiring
similar affidavit to be filed did not conflict with Fed. R. Civ. P. 8 and 9); Ellingson v. Walgreen Co., 78
F.Supp.2d 965 (D.Minn.1999)(rejecting challenge that Rule 26(a) controlled expert disclosures where
Minnesota statute required expert affidavit to be filed in federal diversity tort case based upon medical
malpractice); Connolly v. Foudree, 141 F.R.D. 124 (S.D.Iowa 1992)(finding no conflict between Rule
26(b)(4)(A)(i) and Iowa statute requiring plaintiff in a professional liability case to certify to the court
and other parties the expert's name, qualifications, and the purpose for calling the expert within 180 days
of the defendant's answer).

Federal Rules of Civil Procedure.[12]

In addition, the failure to apply the state statutes would significantly affect the result of the litigation.  A state citizen who is injured, brings a medical malpractice action against federal actors, but does not comply with the state's additional statutory requirements, could be placed in a better position than a state citizen who is similarly injured and brings an action in state court.  The citizen with the state court action, who fails to meet the state statutory requirement, could be prevented from bringing the action or be inconvenienced by having to refile his claim in order to meet the statutory requirements.  This citizen would be unfairly exposed to additional litigation time and expense, while the other state citizen would not.  Moreover, the failure to apply the state statutes in federal court would require a health care provider "to forego the protections afforded by [the state statutes] from frivolous or unmerited lawsuits . . . ."  Hill, 870 F.Supp. at 982.[13]

---

[12]Plaintiffs cite to Hill v. Morrison, 870 F.Supp. 978, 982 (W.D.Mo. 1994), and Smith v. Planned Parenthood of St. Louis Region, 225 F.R.D. at 233, and argue that because Missouri's pre-existing statute allowed a court discretion regarding whether a case may be dismissed for failure to file the required certification, the court in Hill "did not address the current conflicts between Missouri law and [the] Federal Rules . . . ."  Opp. at 36-37, n.30.  However, in Hill, the court specifically indicated that the Missouri statute *and* Rule 11 could be given effect in federal court in a diversity action.  870 F.Supp. at 982.  In Smith, the court also specifically found "no direct conflict between the current Missouri health care affidavit statute and the Federal Rules." 225 F.R.D. at 241.  Moreover, both Hill and Smith were diversity actions between citizens of different states. This case is not a diversity action.  Rather, it is an action under the FTCA which imposes liability on the United States to the same extent as a private person under state law.

Significantly, federal district courts in Pennsylvania routinely apply Rule 1042.3 requiring a certificate of merit to FTCA actions.  See Sloan v. U.S., 2007 WL 2756895, *1 (M.D. Pa. Sept. 20, 2007) (Plaintiff's claim failed when he failed to file the certificate of merit for his medical malpractice claim as required by Pa.R.Civ.P. 1042.3(a)); Osorio v. U.S., 2007 WL 2008498, at *2(Rule 1042.3 applied to FTCA medical negligence action brought by federal prisoner when he was not seen until seventy days after falling and fracturing his finger.)

[13]The Eighth Circuit has rejected arguments regarding alleged conflict between federal and state law without even considering whether it would "significantly affect the result of a litigation for a federal court to disregard a law of a State." See e.g., Moore v. Ernest-Jackson, 16 Fed.Appx. 517 (8th Cir. 2001) (prison inmate's state law claims were properly dismissed for failure to comply with Missouri health care affidavit statute), cert. denied, 535 U.S. 1023, (2002); Weasel v. St. Alexius Med. Ctr., 230 F.3d 348 (8th Cir. 2000)(district court was required to dismiss malpractice action under North Dakota law where plaintiff failed to file expert affidavit); Bellecourt v. U.S., 994 F.2d 427 (8th Cir. 1993)(district did

B. <u>Plaintiffs Must Have Basis for Claims Prior To Pursuing Court Action</u>

Plaintiffs argue that the state statutory requirements cannot apply because they did not have the

medical records necessary to properly allege their claim. <u>See</u> Opp. at 38. Plaintiffs have it wrong.

Plaintiffs are required to have grounds for relief *before* they file their claim. <u>See</u> Fed. R. Civ. P. 11(b)(3).

While Plaintiffs claim that they "requested Woodland's medical records long before filing the Second

Amended Complaint[,]" Opp. at 38, they should have made the request before filing the complaint at all.

Because Plaintiffs did not make their request in a manner that would permit them to comply with the

statutory requirements does not mean the that Defendants have "defeated" their ability to comply with the

statute. Defendant did not "render compliance impossible." <u>Id</u>. at 39. Rather, Plaintiffs should have been

aware of the requirements of the statutes and acted accordingly.[14]

---

not err in dismissing medical malpractice claim with prejudice for failure to file expert affidavit under
Minnesota law), cert. denied, 510 U.S. 1109 (1994).

[14]Plaintiffs' counsel indicates that defendant "reject[ed their] offer to meet and confer as required by
Federal Rule of Civil Procedure 26(f). Opp., Exhibit 6. He then improperly interpreted this as a "part of
a larger pattern of the Bureau of Prisons" to not provide him with documentation. Counsel's
characterization of the conversation is disingenuous at best. Federal Rule of Civil Procedure 26(f) states
that:

> the parties must, as soon as practicable and in any event at least 21 days before a
> scheduling conference is held or a scheduling order is due under Rule 16(b), confer to
> consider the nature and basis of their claims and defenses and the possibilities for prompt
> settlement or resolution of the case, to make or arrange for the disclosures required by
> Rule 26(a)(1), and to develop a proposed discovery plan . . . .

Defendant's counsel indicated to Plaintiffs' counsel that such a meeting was premature. No scheduling
conference had been set and no scheduling order was due. Moreover, Defendant's counsel indicated that
because Defendant had filed a dispositive motion, any ruling on that motion could obviate the need for
discussion of some or all matters. At no time did Plaintiff's counsel indicate to Defendant's counsel that
he was concerned about receiving any documentation or that he had even requested documentation from
the Bureau of Prisons. In fact, Defendant's counsel was not aware that Plaintiffs' counsel had made any
requests under the Freedom of Information Act until she received correspondence from Plaintiffs'
counsel via electronic mail on December 21, 2007, at 8:26 p.m. (the Friday night before the holiday
break). Defendant's counsel forwarded the correspondence to agency counsel. This FOIA request was
for "records generated from April 20, 1990 through the present (including the entire period of Mr.
Woodland's incarceration as well as any posthumous records), and should include records generated at
each and every one of the facilities in which Mr. Woodland was incarcerated." <u>See id</u>. at Exhibit 9.
Agency counsel then promptly made telephone calls which resulted in Plaintiff's counsel being sent
3,810 pages of documents.

**VI.  Claims Based Upon the Actions of USMCFP-Springfield Employees Fail.
(Counts V and VI)**

A.  Pursuant to Missouri Law, These Claims Fail.

Under the choice of law analysis, the law to be applied here is the law in which the alleged injury

occurred - - Missouri.  See MTD at 31.  Under Missouri law, with respect to both counts, Plaintiffs have

failed to even claim that they are entitled to relief.  See Fed. R. Civ. P. 8(a).  Specifically, with respect to

the claim of intentional or reckless infliction of emotional distress, Plaintiffs have failed to claim that they

are entitled to relief for emotional distress that resulted in *bodily harm* to either Woodland or Diane

Sledge.  See TAC at ¶ 83 ("Missouri Medical Center Employees . . . caused Diane Sledge severe

*emotional* distress")(emphasis added); Fed. R. Civ. P. 8(a); Thornburg v. Fed. Express Corp., 62 S.W.3d

421, 427 (Mo.App. W.D. 2001).[15]  Plaintiffs also have failed to properly claim negligent infliction of

emotional distress.  See Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997)(en banc); Fed. R. Civ. P.

---

In his correspondence, Plaintiffs' counsel indicates that the case "has been pending for almost two
years."  Id. at 1.  However, the case has been pending for almost two years as Plaintiffs continued to file
administrative claims from November 29, 2006 through June 14, 2007, each of which must be processed
by the agency, and then to amend their complaint three times.  Plaintiffs' counsel also states that "we
received a response claiming that the documents were 'not yet available' as of April 4, 2007-despite the
fact that the file was available for the April 9, 2007 affidavit of James Lyons."  However, James Lyons
certainly was not in possession of the 3,810 pages of medical records requested by Plaintiff's counsel
when he drafted his affidavit.

Finally, Plaintiff's counsel stated that he "recently received a letter seeking our agreement to pay search
fees-despite the fact that our original request letter specifically stated our agreement to pay any such
fees."  Plaintiffs' counsel fails to understand that it is BOP's policy to inform the FOIA requester of the
amount of the fee, particularly when a request generates such a large number of documents, before
simply billing the requester.

[15]Plaintiffs create a false argument when they state that Ms. Rinker "*inexplicably* . . . state[d] that she
retired from her position on February 2, 2005[,]" Opp. at 17 (emphasis added), but was a witness on
November 12, 2005, when Plaintiff Diane Sledge appeared at USMCFP-Springfield requesting a visit.
See MTD, Exhibit Y.  Plaintiffs claim that there are questions "as to whether . . . []Ms. Rinker[] would
have been involved at USMCFP-Springfield after her retirement date[ . . . and this] factual dispute can
only be resolved at trial." Opp. at 27.  However, from any reading of the declaration, it is clear that Ms.
Rinker could not have served from September *through* February of the same year.  See MTD, Exhibit Y.
In addition, in the declaration Ms. Rinker indicated that she served as Institutional Duty Officer during
the time period of November 8, 2005 through November 15, 2005.  Clearly, then, the date of retirement
of February 2, *2005* is merely a typographical error.

8(a).  There is no reason to believe that the denial of the visit on November 12, 2005 involved an

unreasonable risk of causing distress.  In addition, there is no indication in Plaintiff's complaint that any

alleged emotional distress was even "medically diagnosable . . . [or] significant."  Thornburg, 62 S.W.3d

at 427.  Therefore, Plaintiffs' claims of infliction of intentional, reckless or negligent infliction of

emotional distress in Counts V and VI fail.

     B.  Even if Plaintiffs Could Show That They Are Entitled to Relief Under Missouri Law, Counts
        V and VI are Barred By the Discretionary Function Exception.

      As indicated supra, the FTCA does not apply to acts or omissions by government employees that

are "discretionary functions."  28 U.S.C.2680(a).  Because officials at USMCFP-Springfield had

discretion to approve or deny Plaintiffs' request to visit Woodland on November 12, 2005, Counts V and

VI must be dismissed.  Plaintiffs claim that there is a "dispute of material fact" because they indicate that

they had received permission to visit Woodland.  However, that is irrelevant.  Since a motion to dismiss

for lack of subject matter jurisdiction under Rule 12(b)(1) concerns the court's "very power to hear the

case . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to

hear the case."  MDPhysicians & Assoc., Inc. v. State Bd. of Ins., 957 F.2d 178, 181 (5th Cir.

1992)(additional citations omitted).

      Moreover, as they have done with Counts I and II, Plaintiffs have confused an alleged duty to

Woodland with the applicability of the discretionary function exception.  If the discretionary function

exception applies to the conduct at issue, the court lacks subject matter jurisdiction and need not reach the

merits of the underlying state law cause of action.  In the case of the jurisdictional defense of the

discretionary function exception, the issues concerning the application of the exception (whether the

conduct is unconstrained by federal law and grounded in federal policy concerns) are different and distinct

from issues concerning the merits of plaintiff's claim (whether the conduct is actionable under state tort

law).  See Whalen v. U.S., 29 F.Supp.2d 1093, 1095-1096 (D.S.D. 1998) (discretionary function inquiry

concerning federal statutes and regulations differed from the merits of plaintiffs' state law negligence claims).

With respect to the first prong of the discretionary function exception, Title 18, United States Code, Section 4042 (a)(2)-(3) does not "set[] forth [any] particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their dut[ies] . . .." Calderon, 123 F.3d at 947. Instead, prison officials are given considerable discretion on how best to use their limited resources to fulfill this responsibility. Title 28, Code of Federal Register, Section 540.40 provides general guidance to employees of correctional institutions in fulfilling their duties regarding visitation. Specifically, Section 540.40 states:

> The Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community. The Warden shall develop procedures consistent with this rule to permit inmate visiting. The Warden may restrict inmate visiting when necessary to ensure the security and good order of the institution.

Hence, it is clear that there is no mandate as to specifically how staff duties are to be fulfilled regarding visitation. However, the warden at each institution may develop procedures for staff to follow. See Kelly v. Brewer, 525 F.2d 394, 399 (8th Cir. 1975)("We leave the formulation of specific regulations and methods of visitation to the informed discretion of correctional officials, recognizing that "it is not the function of the federal courts to embroil themselves unduly in matters of prison administration ... or of prison security.").

The visiting procedures at USMCFP-Springfield further demonstrate the discretionary nature of visitation privileges. Indeed, the procedures specifically state that all visiting arrangements must be consistent with "the security and good order of the institution . . . ." MTD, Exhibit L, Section 7. Because it is clear that no federal statutes, regulations or procedures exist which required USMCFP-Springfield employees to follow a specific course of action regarding visitation, the first prong of the discretionary function analysis is satisfied.

With respect to the second prong, it is well settled that prison administrators are granted wide discretion in establishing rules and regulations to maximize the security interests of their institution. Pell v. Procunier, 417 U.S. 817, 827 (1974). Included in this area of institutional security expertise best left to the discretion of prison officials is the establishment of prison policies and procedures governing prison visitations.

> [O]ne of the primary aims of penal security is to insure that persons coming from without the prison - whether they are visitors, employees, or volunteers- do not bring contraband in the form of drugs, weapons, currency or other unauthorized items into the prison.

Newman v. State of Ala., 559 F.2d 283, 291 (5th Cir.1977), cert. denied, 438 U.S. 915 (1978). Accordingly, "[i]nmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives." Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994); Ware v. Morrison, 276 F.3d 385, 388 (8th Cir. 2002)(holding that decision to curtail visitation privileges is discretionary). Therefore, the decisions made regarding visitation at USMCFP-Springfield involved judgments grounded in policy, and the second prong of the discretionary function analysis is satisfied.

In Counts V and VI, Plaintiffs clearly complain about the denial of the visit between Woodland and his mother in November 2005. However, because it is clear that the discretionary function exception bars these claims, Plaintiffs have *now* stated that their claims "are directed at the USMCFP-Springfield employees who arbitrarily denied visitation." See Opp. at 26. But, the question of the alleged arbitrariness of the action of the employees is irrelevant to the discretionary function inquiry. Title 28 U.S.C. § 2680(a) insulates the United States from any claim

> based upon the exercise or performance or failure to perform a discretionary function or duty on the part of . . . an employee of the government *whether or not the discretion involved be abused*.

(emphasis added). See supra at 10-12. Moreover, while Plaintiffs state that the employees arbitrarily violated policy, the statute, regulation and policy clearly call for the right to exercise discretion, and no

policy was violated.

**VII. This Case Should Be Transferred from the District of Columbia**.

Title 28, United States Code, Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The threshold determination in considering a transfer motion is whether the case might have been brought in the place where the movant seeks it to be transferred. Ross v. U.S., 1987 WL 33514, at *2 (D.D.C. December 30, 1987). Here, Plaintiffs have brought "Pennsylvania wrongful death" and "Pennsylvania personal injury" claims, the assault took place in Allenwood, Pennsylvania and, according to the choice of law provisions, Pennsylvania law should be applied to the actions in this complaint. Therefore, this case could have been brought in the Middle District of Pennsylvania. Plaintiffs have also brought "Missouri wrongful death" and Missouri personal injury" claims as well as two claims alleging the intentional or reckless and /negligent infliction of emotional distress arising out of actions that occurred in Springfield, Missouri. Therefore, this case could have been brought in the Western District of Missouri.[16]

In Nat'l Wildlife Fed'n, the Court noted that it could "transfer a case only if the balance of private and public interests weighed in favor of transfer." 437 F.Supp.2d 42, 46 (D.D.C. 2006).

> Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. . .

> The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Id.(citing Greater Yellowstone Coal. v. Bosworth, 180 F.Supp.2d 124, 127 (D.D.C. 2001).

Plaintiffs argue that the case should not be transferred because *both* Plaintiffs live in the District

---

[16]Plaintiffs cite Nat'l Wildlife Fed'n v. Harvey, 437 F.Supp.2d 42 (D.D.C. 2006) and Gemological Inst. of Am., Inc. v. Thi-Dan Phan, 145 F.Supp.2d 68 (D.D.C. 2001) in support of their argument that the matter should not be transferred. However, in both cases, the motions to transfer were granted.

of Columbia.[17]  However, while the plaintiffs may reside in the District of Columbia, all of the parties

whose actions are at issue - - employees at FCI-Allenwood (Counts I and II) and employees at USMCFP-

Springfield (Counts III, IV, V, VI) - - are located outside of the jurisdiction.  Although the plaintiffs'

choice of forum is granted deference, such deference is diminished "where the 'forum has no meaningful

ties to the controversy and no particular interests in the parties or subject matter.'" Id. (citations omitted);

Armco Steel co. v. CSX Corp., 790 F.Supp. 311, 323 (D.D.C. 1991)(deference given to plaintiffs' choice

of forum is "greatly diminished when the activities have little, if any connection with the chosen forum."

See Comptroller of Currency v. Calhoun Nat'l Bank, 626 F.Supp. 137, 140, n.9 (D.D.C. 1985)(plaintiff's

choice of forum not entitled to deference where "insubstantial factual nexus with the plaintiff's choice.").

In addition, the facts of the controversy, the security within FCI-Allenwood and the care

administered at USMCFP-Springfield, did not arise in the District of Columbia.  Significantly, not a single

factual allegation in this complaint concerns events which occurred in the District of Columbia.  Despite

Plaintiffs' contention to the contrary, the individuals with first-hand knowledge of relevant events and

policies are individuals located in Allenwood, Pennsylvania and Springfield, Missouri.  See Sierra Club v.

Flowers, 276 F.Supp.2d 62, 67 (D.D.C. 2003) (holding that District of Columbia lacks connection with

case because fact that parties had office in District of Columbia was "overshadowed by the lack of

evidence that federal officials in [the District of Columbia] played an active or significant role in the

decision at issue.")(internal quotations omitted).  Further, FTCA actions are governed by the law of "the

place where the act or omission [complained of] occurred."  28 U.S.C. § 2672.  Therefore, decisions in

this case will not be governed by the law of the District of Columbia.

Plaintiffs' argument that another reason to maintain this action in the District of Columbia is that

their counsel's law firm is located in Washington, D.C., and "ha[s] no offices in Pennsylvania and

Missouri" is disingenuous.  According to a LexisNexis Court Link search, the law firm is currently

---

[17]Plaintiffs state that two of their potential witnesses are only *"believed to be"* in Washington, D.C." Opp. at 43.

working on 13 active federal court matters in Pennsylvania, 11 of which are in the Eastern District of Pennsylvania.  Moreover, according to the firm's letterhead, it has offices in "Baltimore, Beijing, Berlin, Boston, Brussels, London, Munich, New York, Northern Virginia, Oxford, Palo Alto, Waltham [and] Washington," and so clearly handles cases world-wide.  See Opp., Exhibit 6.  Most importantly, this Court has stated that "any inconvenience that might enure to counsel is unpersuasive and generally not a factor to consider."  Gemological Inst. of Am., Inc., 145 F.Supp.2d at 74(citing Wine Mkts, Int'l, Inc. v. Bass, 939 F.Supp. 178, 182 (E.D.N.Y. 1996).  See Nat'l Wildlife Fed'n, 437 F.Supp.2d at 46 ("Plaintiffs' claims that, as a non-profit organization with limited resources, they will be inconvenienced by having to litigate in Florida are called into doubt by the fact that they are presently litigating other matters in the Southern District of Florida.").

In Nat'l Wildlife Fed'n, the court found that "the ease of access to sources of proof, weigh[ed] in favor of transfer because documents for the record were created primarily in Florida." 437 F.Supp.2d at 48.  Here, the documents for the record were created in Pennsylvania and Missouri, not in the District of Columbia.

Turning to the public interest factors, with respect to the degree to which the courts in both venues are familiar with the governing laws, clearly Pennsylvania and Missouri are more familiar with the application of their own statutes.  See Ross, 1987 WL 33514, at *4 (on a motion to transfer, a court considers the familiarity of a federal district court with the law of the state in which it sits.)  In addition, with respect to the relative congestions of the calendars, there is no evidence that the civil case docket in the District of Columbia is less crowded than the civil case dockets in Pennsylvania or Missouri.

Finally, with respect to the local interest in deciding local controversies at home, the local statutes of Pennsylvania and Missouri are inextricably involved and can be outcome determinative in all of the claims.  Count I is a personal injury claim under Pennsylvania law and Count II is a wrongful death claim under Pennsylvania law.  These laws are outcome determinative especially if, as Plaintiffs argue, the

24

discretionary function exception does not apply. Count III is a personal injury claim under Missouri law and Count IV is a wrongful death claim under Missouri law. These claims directly involve the application of Missouri law, under a medical malpractice or "simple negligence" action. If it is found under choice of law rules that Pennsylvania law applies to these claims, Pennsylvania malpractice or negligence law will be directly involved. Counts V and VI involve claims, under Missouri law, of Intentional or Reckless Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. These allegations are far more likely to be of concern to the citizens of Missouri than to the citizens of the District of Columbia. Therefore, weighing the private and public interests, it is clear that, if any of Plaintiffs' claims survive this motion, this case should be transferred to the Middle District of Pennsylvania or the Western District of Missouri.

## <u>CONCLUSION</u>

For the reasons stated above and in Defendant's Motion to Dismiss or, in the Alternative, to Transfer, Defendant's motion should be granted.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR # 435409
Assistant United States Attorney
555 Fourth Street, N.W., Civil Division
Washington, D.C.  20530
(202) 514-6531
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this 6th day of February, 2008, the foregoing, and the attached Orders, were served upon counsel for Plaintiffs via the Court's Electronic Filing System, and mailed postage prepaid to:

> Thomas F. Connell
> Demian S. Ahn
> Wilmer Cutler Pickering
>  Hale and Dorr, LLP
> 1875 Pennsylvania Avenue, N.W.
> Washington, D.C.  20006

/s/_____
MARIAN L. BORUM
Assistant United States Attorney

26